HAWAIIAN TRUST COMPANY, LIMITED, TRUSTEE OF THE TRUST ESTATE OF JOSE GOMES FARIA, DECEASED *v.* JOSEPH G. FARIA, ET AL.

No. 4044.

Argued January 9, 1959.      Decided July 23, 1959.

Rice, C. J., Stainback and Marumoto, JJ.

OPINION OF THE COURT BY RICE, C. J.

Hawaiian Trust Company, Limited, plaintiff-appellee herein, is a Hawaiian corporation and is the duly qualified acting successor trustee of the trust estate created by the will of Jose Gomes Faria, Deceased, having been appointed as such trustee on August 27,

1943, as successor to Lawrence Santos who resigned as such trustee and who had been appointed as such trustee on September 18, 1942, as successor to Arthur G. Faria, who died on May 7, 1942.

Jose Gomes Faria died a resident of the Territory of Hawaii. His will—a copy of which is included in an appendix hereto—provided that all of his property, after payment of debts, should be held in trust. The trustee, after payment of an annuity to a sister, was to divide the remaining income in equal one-half parts, one of which was to be paid to the testator's wife during her lifetime and was at her death to be divided among the testator's children or their issue in the manner provided for in the paragraph covering distribution of the other one-half.

The testator's wife and his sister, the annuitant, have both died, so all of the net income of the trust has become payable in accordance with the intent of the testator and the provisions of the will which are as follows:

"* * * The remaining one equal half part or share of the net income of my said property and the investments for the time being representing the same to pay the same in equal parts or shares, to my children LUIZ GOMES FARIA of Honolulu, ADELAIDE G. CABRAL wife of Manuel Cabral of Oakland, State of California, ARTHUR G. FARIA of Honolulu, GEORGE G. FARIA of Honolulu, JOSE DA CRUZ FARIA of Oakland, State of California, LUCY G. GOES wife of John Gomes of Honolulu, MARIA G. FARIA of Honolulu, and PALMIRA G. SANTOS wife of Joseph Santos of Honolulu during their respective lives, and in case of the death of any of my said children without issue living at the time, then, and in that event his part or share of said income shall be divided equally amongst my surviving children, but if any of my said children shall depart this life leaving issue him surviving, such issue shall be entitled to and shall receive the part or share of said net income to which his or her parent was entitled during his or her life time. The payment of said net income to my said children or their issue shall be made every half year from the date of my death.

"I direct that upon the death of my wife MARIA DO

MONTE FARIA the share or part of said net income to her herein devised shall be divided amongst my children herein name or their issue in the manner hereinabove provided."

The trust is to terminate upon the death of the last survivor of the wife and children, and, at termination, the trust corpus is to be divided per stirpes among issue of the testator's children. The trust has not yet terminated. All the others have died and Joseph G. Faria, defendant-appellant herein, is the only one living of testator's named children.

Listed by their given names, the deceased children of the testator died in the years and with, or without, leaving issue, as follows:

LUIZ (Luis), died in 1935, leaving issue;
ADELAIDE, died in 1941, leaving issue;
ARTHUR, died in 1942, no issue;
GEORGE, died in 1944, leaving issue;
PALMIRA, died in 1950, leaving issue;
LUCY, died in May 1955, leaving issue; and
MARIA, died in August 1955, no issue.

Until the death of Maria in August, 1955, the named trustee and each successor trustee paid the portion of the net income at the time distributable, under the above-quoted trust provisions, equally—"in equal parts or shares"—to the testator's named children at the time surviving and per stirpes to the issue, if any, of each of testator's named children then (at the time of payment) deceased.

Arthur was the first of testator's children to die without issue. At the time of Arthur's death in 1942, two of the testator's children, Adelaide and Luiz (Luis), were deceased, leaving issue. Subsequently, others of testator's children, namely, George, Palmira and Lucy died, each of them leaving issue. The seventh to die was Maria and she died childless.

Subsequent to Arthur's death, the then trustee, Lawrence Santos, filed a petition to resign and for the appointment of the present trustee as successor trustee. In connection with his resignation, Lawrence Santos filed his final accounts as trustee. These

accounts showed distribution of income subsequent to Arthur's death and showed such distributions of the income in sevenths equally among the testator's surviving children and the issue of the testator's two deceased children, Adelaide and Luiz (Luis), the distribution to Adelaide's and Luiz's children being per stirpes.

In that proceeding in accounting, all beneficiaries were made parties, including the present appellant Joseph G. Faria. No objection to the accounts was filed by any of the beneficiaries and no question was raised by any beneficiary as to the distribution of the income in equal sevenths after Arthur's death.

The present trustee, from and after its appointment, also continued to distribute the income in the same manner as its predecessor trustee, including the children of Luiz and Adelaide per stirpes, so that the income was distributed in sevenths from and after Arthur's death until Maria died without issue in 1955. Copies of the accounts were furnished to each beneficiary annually. No beneficiary, including Joseph, ever questioned the distribution made as shown by the accounts.

In 1955, after the death of Maria, the trustee, plaintiff-appellee herein, for the first time conceived that possibly the will could direct a different distribution than that which had always before been made. The trustee withheld from distribution a one-seventh of the net income of the trust (the share which would have been Maria's if she had lived) and commenced in the circuit court, first circuit, Territory of Hawaii, as civil number 1632, proceedings for instruction, from which the appeal herein has eventualized.

The trustee, plaintiff-appellee herein, in the proceeding in the circuit court expressed doubt as to the following matters:

"(a) Whether, following the death of Arthur G. Faria without issue on May 7, 1942, the share of income to which he would have been entitled had he continued to survive should have been paid in equal shares to those of the testator's children who were then surviving and to the issue of those who subsequently died, or whether it should have been paid, as it was actually paid, in equal shares to those of the testator's children who were then surviving and to the issue of those of the testator's children who were then dead and to the issue of those

of the testator's children who subsequently died.

"(b) Whether, following the death of Maria G. Faria Kilburn without issue on August 27, 1955, the share of income to which she would have been entitled had she continued to survive, should be paid to Joseph G. Faria as the sole surviving child of the testator, or whether it should be paid in equal·shares to Joseph G. Faria and the issue of the testator's deceased children, such issue taking collectively the share to which their parent would have been entitled had he or she continued to survive.

"(c) Whether the order signed by this court [circuit court] July 10, 1945, approving and allowing the accounts of the predecessor trustee is *res judicata* as to payments made before August 27, 1943, and/or thereafter of the income to which a child of the testator who died without issue would have been entitled had he or she continued to survive.

"(d) Whether, should the court [circuit court] decide that the order of July 10, 1945 is not *res judicata* as to any payments made after August 27, 1943, any of the current income beneficiaries or contingent income beneficiaries have the right now to assert that following the death of Arthur G. Faria without issue on May 7, 1942, the trustee should have paid the income to which he would have been entitled had he continued to survive in equal shares solely to the testator's children who were then surviving and to the issue of said children who thereafter died, or whether they have lost any such right they may. have had through release, waiver, estoppel, laches, or for any other reason."

It is indicated by the record that all persons and parties having, or who might have, any interest in the trust estate of Jose Gomes Faria, Deceased, whether as present or prospective beneficiaries thereof, were made parties to the proceeding in the circuit court either personally or by registered mail, or had notice of the proceeding, by notice of pendency of suit duly published in the Honolulu Star-Bulletin, a newspaper published in Honolulu, Territory of Hawaii; that by orders of the circuit court a guardian ad litem was appointed for all minors and, also, class representation

was established and thus representation effected of and for persons and parties in interest not otherwise represented.

Joseph G. Faria, as a named defendant therein, and now the sole appellant herein, filed an answer in the circuit court, purporting to be "for himself and those of the heirs at law and/or legatees and/or personal representatives of GEORGE G. FARIA and PALMEDA G. SCHWARTZ who have the same interests as he has and who are similarly situated as he is," and in such answer alleged that: (a) following the death of Arthur G. Faria without issue on May 7, 1942, his share of income should have been paid to the testator's children then surviving and to their issue upon their respective subsequent deaths; (b) that since the death of Maria G. Faria Kilburn without issue on August 27, 1955, her share of income should be paid to him, Joseph G.; (c) that the order of court dated August 10, 1945, allowing the accounts of the predecessor trustee, "are not *res judicata*" as to the pending proceeding or as to any prior payments made to him by any trustee; and (d) that he, Joseph G., had not released, waived or otherwise lost his right to assert proper administration of the trust estate.

Agnes V. King, another of the named defendants in the circuit court, for herself and for her children, Linda Leigh King and Carolyn Leigh King, filed in an answer in effect contra to the position taken by Joseph G. Faria.

Herbert Faria, Beatrice Faria Ferreira, Genevieve Faria Albright Greager and Viola Faria Henderson, four of the named defendants in the circuit court, filed therein an answer in effect a concurrence in the position taken in the answer of Agnes V. King.

M. G. Augustine, Jr., executor of the will of Maria G. Faria Kilburn, Deceased, one of the defendants named therein filed in the circuit court a joinder in petition.

William B. Stephenson, guardian ad litem for the minors represented by him, filed in the circuit court an answer to the effect that the circuit court should construe the will of the testator, Jose Gomes Faria, to mean that on the death of one of the testator's children without issue, the income to which that child would have been entitled should he continue to survive is payable to those who were then surviving of the testator's children and, also, to the issue of any of the testator's children who were then dead. The

answer of the guardian ad litem also was to the effect that the order of July 10, 1945, referred to *supra,* is not *res judicata* as to the guardian.

After a hearing and submission to the trial court of memorandums pertinent to such preliminary issues, the trial court entered and filed a "DECISION ON PRELIMINARY ISSUES INVOLVING RES JUDICATA, LACHES, WAIVER, RELEASE AND ESTOPPEL," and thereby ruled as hereinafter:

## (1) *Res Judicata*

That the order of the circuit court filed July 10, 1945, approving the final account of Lawrence Santos as trustee of the Faria trust for the period from September 30, 1942 to August 27, 1943, is *res judicata* as to all payments shown in said account; and that as to payments made after August 27, 1943, that is, after the period covered by the aforementioned account, the order of July 10, 1945, is not *res judicata.*

## (2) *Laches*

"* * * Joseph G. Faria is not barred on the theory of laches from claiming that he has been underpaid and that the trust was erroneously construed because none of the parties who might assert such a defense have relied upon Joseph's inaction to their detriment."

## (3) *Waiver, Release and Estoppel*

"* * * that none of the defenses of waiver, release or estoppel in any way interfere with the right of Joseph G. Faria to assert that he has been underpaid since Arthur's death in 1942 and that the trust was erroneously construed following Arthur's death."

Subsequently, after submission to the court of memorandums pertinent to the trust provisions of the will of Jose Gomes Faria, Deceased, the trial court entered and filed its "DECISION ON BILL FOR INSTRUCTIONS" and thereafter its "FINDINGS OF FACT AND CONCLUSIONS OF LAW"—a copy of which is contained in the appendix hereto—and pursuant thereto entered its "JUDGMENT" as follows:

"* * * that the plaintiff is hereby instructed that under the will of Jose Gomes Faria, deceased, on the death of one of the testator's children without issue, the income to which that child would have been entitled had he or she continued to survive is payable to those who are then surviving of the testator's children and, also, of the issue of any of the testator's children who are then dead, such issue taking per stirpes by right of representation in each generation, and that, therefore, the share of income to which Arthur G. Faria was entitled prior to his death on May 7, 1942, was immediately following his death payable in equal shares to those who were then surviving of the children of the testator and of the issue of Luiz Gomes Faria and Adelaid G. Cabral who were then dead, such issue taking per stirpes by right of representation in each generation, and the share of income to which Maria G. Faria Kilburn was entitled prior to her death on August 27, 1955, was immediately following her death payable in equal shares to Joseph G. Faria and to those who were then surviving of the issue of Luiz Gomes Faria, Adelaid G. Cabral, George G. Faria, Lucy G. Gomes and Palmeda G. Schwartz, such issue taking per stirpes by right of representation in each generation."

It is from that judgment, *supra,* defendant-appellant Joseph G. Faria has appealed to this Supreme Court. His position is opposed to that of all the other beneficiaries, who will hereinafter be referred to as "respondents."

The substance of the specification of errors as contained in the opening brief of defendant-appellant is set forth below.

"1. The trial court erred in Finding of Fact No. 10 * * * in finding that Jose Gomes Faria in his Will expressed an intent that issue of his deceased children should receive the income that their parents would have received had their parents continued to survive.

"This finding of fact by the trial court was erroneous because the very words used by Jose Gomes Faria specifically provide that issue of deceased children are to receive the share of income which their parent *had received* during his or her lifetime.

"2. The trial court erred in Conclusion of Law No. 2 * * * in concluding that upon the death of each of two children without issue, each such child's share of income was divisible per stirpes among surviving children and the issue of deceased children.

"This conclusion of law by the trial court was erroneous because the very words used by Jose Gomes Faria specifically provide that if any of his children died without issue, such child's share of income was to be paid to the testator's surviving children."

It is the contention of defendant-appellant that the words actually used by the testator clearly and expressly provide that upon the death of testator's son Arthur without issue, in 1942, the trust income was divisible equally among Arthur's surviving brothers and sisters. Also, that likewise, upon Maria's death without issue, in August, 1955, the trust income was payable only to the testator's "surviving children"—and only one was surviving: defendant-appellant Joseph G. Faria.

The respondents oppose the contention of the defendant-appellant. Among themselves they have a common viewpoint, although they severally present it in language which varies in their respective briefs.

In substance, the contention of the respondents is that from examination of the will in its entirety it is quite apparent that the language upon which appellant Joseph G. Faria bases his claim was not a complete and clear expression of the intention of the testator, as from the will in its entirety there is manifest an intention of the testator that issue of his named children who died "step into their parent's shoes," and the whole produces the conviction that the testator intended equal participation, even though he failed to so specifically state and the defect will be supplied by implication. Thus the will should be construed so that in the event of the death of a child without issue, such decedent's part or share of the income should be divided equally among the survivors of testator's named children and the issue per stirpes of deceased children.

As said in the opinion of this court in the matter of the trust estate of Richard Meek, Deceased, 42 Haw. 335, at 347, quoting from Buller, Justice, in the case of *Hodgson* v. *Ambrose* (1780), 1 Douglas 342; 99 English Reports (full reprint) 219: "There is no rule better established than that the intention of a testator expressed in his will, if consistent with the rules of law, shall prevail. That is the first and great rule in the exposition of all wills; and it is a rule to which all others must bend. * * * This can only be discovered by taking the whole will together. If it be apparent, I know of no case that says, a strict legal construction, or a technical sense of any words whatever, shall prevail against it; * * *." Such rule thus enunciated was recognized by Mr. Chief Justice Marshall in delivering the opinion of the court in *Smith* v. *Bell*, in the Supreme Court of the United States, in 1832. 6 Peters 69, 31 U. S. 68; likewise in the opinion of Chief Justice Allen of the Supreme Court of Hawaii, in *Harris* v. *Judd Adm.*, 3 Haw. 421, 426 (1873). It has since been recognized, observed and followed in Hawaii. See *Zupplein* v. *Austin*, 6 Haw. 8, 10 (1867); *Thurston* v. *Allen*, 8 Haw. 392, 401 (1892); *Booth* v. *Baker*, 10 Haw. 543, 545 (1896); *Hapai* v. *Brown*, 21 Haw. 499, 505 (1913); *Paiko* v. *Boeynaems*, 22 Haw. 233, 238 (1914); *In re Isenberg Estate*, 28 Haw. 590, 649 (1925); *First Trust Company of Hilo* v. *Roy*, 29 Haw. 474, 480 (1926); *In re Estate of Deering*, 30 Haw. 217 (1927); *Bishop Trust Company* v. *Jacobs*, 36 Haw. 314, 323 (1942).

In the instant case, the testator expressly directed that the share of a child, deceased without issue, should be "divided equally amongst my surviving children."

If the words "my surviving children" are taken in their usual connotation of "children surviving me," then clearly a per stirpital distribution of income at all times is called for. Only if the words are twisted to mean "my children who are still living then one of my children dies without issue" does the contention of defendant-appellant Joseph G. Faria follow.

Alone, the word "surviving" could conceivably raise a question as to whether (a) surviving the testator or (b) surviving a child of the testator who died without issue is meant. However, "my" is a possessive form of "I." When coupled with the word "sur-

viving," "my" points clearly to the testator as the subject and to his death as the event to which the word "surviving" refers. The ordinary, grammatical meaning of the testator's words is, then, "children surviving me."

That the testator intended the word "my surviving children" to be read in the latter, *supra* sense is apparent upon an examination of the two other places in the paragraph where the testator referred to a death. The clauses in which these references appear are "in case of the death of any of my said children without issue *living at the time*" (emphasis added) and "if any of my said children shall depart this life leaving issue *him surviving*" (emphasis added). The emphasized words leave no doubt that in these instances the testator had reference to the death of one of his children as the measuring date. It follows that had the testator wished to make the death of a child without issue the measuring date in the instance of "my surviving children," he would have done so equally clearly. Not having done so, it is apparent that the testator intended the words "my surviving children" to be read in the usual sense of "children surviving me."

In *Black* v. *Woods,* 213 Pa. 583, 63 Atl. 129 (1906) the court stated that the words "my surviving children" had a settled meaning tantamount to a rule of property that unless it clearly appeared from the will that the testator ascribed a different meaning to the words they were to be taken as meaning those children who survived the testator and not as those children surviving the life tenant. The factual situation in that case was that the testator devised lands in trust for one of his sons for life, then in fee simple to the son's issue and, failing any such issue, the testator said that he wished the property to be conveyed to "my surviving children." The son died without issue. The question before the Pennsylvania court was whether the heirs of one of the testator's children who had survived the testator, but had predeceased the life tenant, could share in the lands or whether sharing was restricted to the testator's children who had survived the life tenant. The court held that the heirs of the child who had survived the testator, but predeceased the life tenant, might share in the lands.

A reason for the rule that "my surviving children" should be construed as referring to the children surviving at the testator's

death is that such a construction has the general effect of distributing property among all of the testator's descendants rather than shunting it off into one line.

*In re Nass' Estate*, 320 Pa. 380, 182 Atl. 401 (1936) is particularly applicable in the instant case on appeal. Under consideration in that case was a will devising income from trust to testator's daughters and providing that, upon death of a daughter without issue, "then and in such case" the share of such daughter was bequeathed in trust for surviving child or children. Use of the quoted words was *held* not to bar application of the rule that words of survivorship refer to death of testator; the effect of the word "then" generally being indicative of time when those entitled were to take, rather than time to determine identity of parties entitled to take.

The court said in the *Nass' Estate* case, *supra*, that the testator "* * * intended to treat, not only his own children alike, but his children's children, and no other thought appears in the will. He intended an equal division of his estate among his issue, and the repeated use of the word 'equal' throughout his will is a clear demonstration of this fact." The court then quoted from *Page on Wills*, second edition, p. 1562: "Where the will shows an intention that the descendants of deceased children shall take, and an evident intention of equality of distribution is manifested, the word 'survivors' has been held to apply to the death of the testator."

Joseph G. Faria, defendant-appellant herein, maintains that in using the language he did, the testator consciously intended to provide that when one of his named children died without issue only that child's surviving brothers and sisters should participate in such deceased child's share of the income thereafter; that the issue of any child who had died prior to such death were deliberately and purposely barred from receiving any portion of such deceased child's share of income; that the testator wanted to make a radically different disposition of the income when a child died without issue from all other situations where issue of deceased children should share.

The answering brief of respondent Agnes V. King states that such construction, sought by the defendant-appellant herein, re-

sults in a very peculiar situation, which she submits is clearly at variance with all other provisions of the will and is not in accord with the testator's intention as shown throughout the will.

The brief of respondent Agnes V. King then presents an exposition of the respondent's view of what would result from the construction of the will sought by the defendant-appellant and we quote from her brief as follows:

"Let us take the facts in this case. Luis and Adelaide died before Arthur (the first to die without issue). Upon the death of Luis, his children became entitled to his one-eighth of one-half of the income, and under Joseph G. Faria's construction, such right became frozen for the duration of the trust. The same applies with respect to the children of Adelaide. Then Arthur dies without issue. Thereafter, under the construction claimed by Joseph G. Faria, the issue of Luis and Adelaide continue to receive one-eighth each of one-half of the income and the remaining six-eighths of this one-half would be distributed among the five surviving children, George, Palmeda [Palmira], Lucy, Maria and Joseph. Then the widow dies. Thereafter, under Joseph G. Faria's contention, the children of Luis and Adelaide receive one-eighth each of one-half of the income, and the remaining five children receive six-eighths of one-half plus all of the widow's one-half, or a total of 30/32 or 15/16 of the total income for five children and only 1/16 of the total income for the issue of two deceased children. George dies two years after Arthur leaving issue. His issue, since George was one of the five entitled to participate in Arthur's share of the income, would therefore receive 3/16 (1/5 of 15/16) of the income, while the children of Luis and Adelaide, because their parents had predeceased Arthur, each receive only 1/32 of the income. The calendar date of the parent's death, therefore, favors the issue of George and also the issue of Palmeda [Palmira] and of Lucy over the issue of Luis and Adelaide.

"Can it be said that such is the intention of a testator whose entire plan of disposition of his estate, as shown clearly throughout his Will, is to place all of his grandchildren on an equal footing?

"Actually, if the quoted language is literally construed, then upon the death of George, Palmeda [Palmira] and Lucy after Arthur's death, their issue would lose the right to participate in the income formerly payable to Arthur, since this language provides that the income shall be divided equally amongst 'my surviving children.' It is not believed that even Joseph would go so far as to import to these words such a literal construction.

"The construction sought by Joseph G. Faria leads to even more peculiar results which are clearly not the testator's intention as shown by the entire Will. Under his contention, the issue of any child who died after Arthur are entitled to participate in Arthur's share, but when any other child subsequently died without issue, e.g., Maria, these same issue who were favored when Arthur died because their parent was still alive, now fall into the same category as the issue of Luis and Adelaide, who died before Arthur, and are barred from participating in the share of a child of the testator who died childless after their parent. So again the calendar date of death changes the status of the issue of a child. All of the issue of deceased children are precluded from sharing in Maria's share because their parents died before her, and her share, according to Joseph, should go entirely to him as the only surviving child. Thus, again, the calendar date of death affects the rights of issue and puts them on different footings, depending upon the date of the parent's death. These issue can take in one case but not in another, depending upon the date of death of the parent."

We are in accord with what in the decision of the circuit court is said as follows:

"The Court is convinced from what is said in the will that it was the testator's intent that the issue of deceased children should share per stirpes in the share of any child who dies without issue. To hold otherwise—that the share of any child who dies without issue should be divided only among the then surviving children of the testator—would result in an absurdity, and could, under various sets of circumstances, all of which were entirely possible at the time the will was drawn, and at the time

of the testator's death, result in a multiplicity of absurdities. Several of these are illustrated in the briefs in behalf of Agnes V. King and the Guardian ad Litem.

"Had the testator intended that the issue of deceased children should not share in the share of a child who subsequently dies without issue, it is the belief of the Court that he would have excluded all issue of deceased children in the income and postponed their participation equally until distribution of the corpus. Nor would he have provided that upon the death of his wife, who was to take one half the income, her share of the income should 'be divided amongst my children herein named or their issue in the manner hereinabove provided.'

"Everything in the will supports the construction that it was the testator's intent to treat all his children equally as to income, and all his children's children equally on a per stirpital basis both as to income and principal. * * *."

It is our conclusion and we hold that the trial court did not err in its finding of fact number "10" and did not err in its conclusion of law number "2," which finding and which conclusion were by the defendant-appellant herein specified as errors on which his appeal is based. Holding accordingly, the judgment appealed from should be, and it is,

affirmed.

*Pratt, Tavares & Cassidy* (*Daniel H. Case*) for Joseph G. Faria et al, defendants-appellants.

*Smith, Wild, Beebe & Cades* (*Charles A. Gregory*) for Agnes V. King, defendant.

*Stephenson & Ashford* (*A. James Wriston, Jr.*) for guardian ad litem.

*Anderson, Wrenn & Jenks* (*Richard E. Stifel*) for plaintiff-appellee, filed no brief and did not argue.

*Yasutaka Fukushima* for M. G. Augustine, Jr., Executor of the Estate of Maria G. Faria Kilburn, deceased, defendant.

*Wilford D. Godbold* for Gertrude G. Andrus and Hawaiian Trust Co., Ltd., administrator with the will annexed of Lucy G. Gomes, deceased, defendants.

*John E. Parks* for Lydia C. DeWolfe, defendant.

*Nane A. Aluli* for Herbert Faria, Beatrice Faria Ferreira, Viola Faria Henderson and Genevieve Faria Albright Greager, defendants.

APPENDIX TO OPINION OF THE COURT

Copy of the Will of Jose Gomes Faria

This the last Will and Testament of me, JOSE GOMES FARIA, of the City and County of Honolulu, Territory of Hawaii.

I direct the payment of my just debts and funeral and testamentary expenses by my Executor hereinafter named.

I give and bequeath all my plate, linen, china, glass, trinkets, jewelry and furniture and other household effects and everything in or about or belonging to my dwelling and used for and in connection therewith or the adornment or enjoyment thereof to my wife MARIA DO MONTE FARIA absolutely.

I give and bequeath to my wife MARIA DO MONTE FARIA one equal half of all money or monies and/or securities owned by me at the time of my death, the other one equal half of which I, give and bequeath to my children in equal shares between them.

Subject to the payment of my debts and funeral and testamentary expenses I give, devise and bequeath all my property of every description nature and kind whatsoever and wheresoever the same may be and not otherwise disposed of unto my son ARTHUR G. FARIA of Honolulu, aforesaid and his successors in trust to pay to my sister MARIA JOSE GOMES FARIA who resides at Funchal in Madeira for life an annuity of Sixty Dollars ($60.00) payable half yearly, from the date of my death, which annuity shall be deducted from the net income of all my property and in trust to pay one equal half part or share of the balance of the net income of my said property and the investments for the time being representing the same to my wife MARIA DO MONTE FARIA for life, provided however, that the payment of said share of my income to my said wife shall at no time be less than Two Hundred Dollars ($200.00) each month, payable monthly. The remaining

/s/ Jose Gomes Faria

one equal half part or share of the net income of my·said property and the investments for the time being representing the same to pay the same in equal parts or shares, to my children LUIZ GOMES FARIA of Honolulu, ADELAIDE G. CABRAL wife of Manuel Cabral of Oakland, State of California, ARTHUR G. FARIA of Honolulu, GEORGE G. FARIA of Honolulu, JOSE DA CRUZ FARIA of Oakland, State of California, LUCY G. GOES wife of John Gomes of Honolulu, MARIA G. FARIA of Honolulu, and PALMIRA G. SANTOS wife of Joseph Santos of Honolulu during their respective lives, and in case of the death of any of my said children without issue living at the time, then, and in that event his part or share of said income shall be divided equally amongst my surviving children, but if any of my said children shall depart this life leaving issue him surviving, such issue shall be entitled to and shall receive the part or share of said net income to which his or her parent was entitled during his or her life time. The payment of said net income to my said children or their issue shall be made every half year from the date of my death.

I direct that upon the death of my wife MARIA DO MONTE FARIA the share or part of said net income to her herein devised shall be divided amongst my children herein name or their issue in the manner hereinabove provided.  ·

I further direct and declare that upon the death of the last survivor of my said wife and my said children this trust shall terminate and all my said property shall be divided among the issue of my said children then living "per Stripes" and not "per Capita."

I give to my son the said ARTHUR G. FARIA and his successors in trust hereinafter called my trustee or trustees in addition to all powers conferred on trustees by law the power to manage all of my said property including the power to let or demise any of my real property for any term or terms so that there be reserved the best results (to be incident to the immediate reversion) that can be reasonably obtained for the same and otherwise on such terms and conditions as he or they shall think fit, also to accept of surrenders of leases and tenancies on such terms and conditions as he or they shall think fit and also to improve any of my real property in any manner that he or they shall think fit and to raise the

money necessary for the purpose either by a charge on any of my real property or in any other manner.

I also give to my trustee or trustees the power to exchange for other lands and hereditaments all or any part of my property and to give or receive money for equality of exchange, also the power to invest in sound investments including the purchase of real estate. (where the same is necessary for the improvement or necessary or convenient for the better enjoyment or where the same would be. likely to enhance the value of any of my real property) all moneys that shall come to the hands of my trustee or trustees that shall require investment, shall be so invested with power to vary such investments.

PROVIDED HOWEVER AND I hereby declare that the power to make any lease or leases of my real property for a longer term than five (5) years except as aforesaid or to borrow any money on a Mortgage of any of my real property for the purpose of improving any of my said real property shall not be exercised without the approval of a judge of the Territory of Hawaii having jurisdiction over trust estates where my property is situated.

On the death of the said ARTHUR G. FARIA or any of his successors in trust or if my said son or any of his successors in trust shall resign the trusteeship or shall become unfit or incapable to act as a trustee of this my will then and in every such case my said wife and my surviving children or such of the said persons as shall then be living shall have full power to appoint a trustee in the place of the trustee so dying, resigning or becoming unfit or incapable by an instrument in writing and on every such appointment the trust estate shall vest in the new trustee.

I declare that the provision for my wife herein contained shall be accepted by her in full satisfaction of and is in lieu of her right of dower in my real and personal property.

I hereby appoint my said son ARTHUR G. FARIA to be the sole Executor and trustee of this my will, and respectfully request the court before which this will shall be presented for Probate to appoint my said son as Executor thereof without giving any bond whatsoever.

I revoke all former will by me at any time heretofore made and declare this to be my last Will and Testament.

IN WITNESS WHEREOF I have hereunto and to the Three preceding pages set my hand at Honolulu aforesaid this 1st day of May, 1918.

/s/ JOSE GOMES FARIA

Signed and declared by this testator JOSE GOMES FARIA as and for his last will and testament in the presence of us both being present at the same time who at his request in his presence and in the presence of each other have hereunto subscribed our names as witnesses.

/s/ A. H. R. VIEIRA
/s/ FRANK ANDRADE

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff, on February 29, 1956, filed its complaint for instructions as to the administration of a trust created under the will of Jose Gomes Faria, deceased, hereinafter called the testator. Plaintiff named as defendants the following: the testator's sole surviving child and the children of the testator's deceased children, said persons being alleged to be all of the current income beneficiaries of said trust; the grandchildren and the great grandchild of the testator's deceased children, said persons being alleged to be all of the living contingent income beneficiaries of said trust; the executor of the will of Maria G. Faria Kilburn, deceased; the administrator of the estate of Lucy G. Gomes, deceased; and the unknown heirs at law and/or legatees and/or personal representatives of George G. Faria, deceased, and of Palmeda G. Schwartz, deceased. Also, on February 29, 1956, an order was entered herein providing for service upon nonresidents by registered mail and upon nonresidents and unknown persons by publication. A further order was entered herein on said date providing for service upon resident minors. A return of service was filed herein on March 7, 1956, showing that personal service had been made upon each of the resident defendants and, also, that the order of service filed herein February 29, 1956, had been served upon a parent of each of the resident minor defendants, except that service was not made on defendants June

Santos Hutchinson, J. Lawrence Hutchinson and Bruce Santos. On March 8, 1956, an order was entered herein amending the complaint by adding a minor defendant, Louis Joel Faria, a contingent income beneficiary of the said trust and directing that service be made upon him. Also, on March 8, 1956, an order was entered providing for service upon June Santos Hutchinson, J. Lawrence Hutchinson and Bruce Santos by registered mail. On March 27, 1956, by order of this Court, William B. Stephenson was appointed guardian ad litem for all minor defendants. On the same day an order was entered (1) appointing such of the contingent income beneficiaries who appeared herein to represent as a class all contingent income beneficiaries who did not appear and all persons who might become contingent income beneficiaries, and (2) appointing Joseph G. Faria to represent as a class all of the heirs at law and/or legatees and/or personal representatives of George G. Faria and Palmeda G. Schwartz who had the same interest as he had, and (3) appointing those of the contingent income beneficiaries who are the children of Luiz Gomes Faria and Adelaid G. Cabral to represent as a class those of the heirs at law and/or legatees and/or personal representatives of George G. Faria and Palmeda G. Schwartz who have the same interests as they had. Appearances were entered herein as follows: M. G. Augustine, Jr., Executor of the Will of Maria G. Faria Kilburn, deceased, appeared by Peter A. Lee and Yasutaka Fukushima; Hawaiian Trust Company, Limited, Administrator of the Estate of Lucy G. Gomes, deceased, appeared by Wilford D. Godbold; William B. Stephenson, guardian ad litem, appeared in person and by Stephenson & Ashford; Joseph G. Faria, appeared by C. Dudley Pratt and Daral G. Conklin; Agnes V. King appeared by C. A. Gregory; Herbert Faria, Beatrice Faria Ferreira, Genevieve Faria Albright Greager and Viola Faria Henderson appeared by Nane A. Aluli, and plaintiff appeared by Anderson, Wrenn & Jenks. A hearing was held May 4, 1956, at which evidence was adduced in support of all of the factual allegations of the complaint. On June 19, 1956, the certificate of the clerk of this court was filed showing that no answer or other pleading had been filed by or on behalf of Glenwood Alfred Ferreira, Lorraine Mary Ferreira, Louis Faria, Walter Faria, Lydia Cabral DeWolf, Charlotte Virginia Faria Donnelly,

Robert Gomes Faria, Lawrence Santos, June Santos Hutchinson, Bruce Santos and Mrs. Irmgard S. Santos. Thereafter, memorandums were filed by certain of the parties in respect to the preliminary issues involving res judicata, laches, waiver, release and estoppel, and, on April 23, 1957, the Court filed its decision in respect thereto deciding that the order entered herein July 10, 1945, approving the final account of the predecessor trustee Lawrence Santos was res judicata as to all payments shown by said account, but that in no other respect did the doctrine of res judicata nor the rules pertaining to laches, waiver, release or estoppel in any way interfere with the right of Joseph G. Faria to take whatever position he chose in respect to the interpretation of the will of Jose Gomes Faria, deceased. Thereafter, memorandums were filed by certain parties on the merits of the case and, all parties appearing having stipulated that the case be decided upon the basis of said memorandums without oral argument, the Court entered its decision on the merits on June 18, 1957.

## FINDINGS OF FACT

1. Service of the complaint and summons was duly made on all resident defendants in accordance with Rule 4 of the Hawaii Rules of Civil Procedure, and substituted service upon all nonresident defendants and upon all unknown persons concerned with or having any right or interest in the subject matter of this proceeding was duly made in accordance with said Rule 4 and Section 12406, Revised Laws of Hawaii 1945.

2. Plaintiff, Hawaiian Trust Company, Limited, is the duly qualified and acting successor trustee of the trust estate created by the will of Jose Gomes Faria, deceased.

3. The current income beneficiaries of said trust estate are the sole surviving child of the said Jose Gomes Faria, deceased, and the surviving children of the testator's deceased children, and the contingent income beneficiaries are the grandchildren and great grandchildren of the testator's deceased children, and the names of said current income beneficiaries and said contingent income beneficiaries are as set forth in paragraph 2 of the complaint herein as amended by order of this Court filed March 8, 1956.

4. All of the testator's children were beneficiaries of the trust estate. Luiz Gomes Faria, son of the testator, died April 21, 1935, leaving issue; Adelaid G. Cabral, daughter of the testator, died September 17, 1941, leaving issue; Arthur G. Faria, son of the testator, died May 7, 1942, without issue; George G. Faria, son of the testator, died October 19, 1944, leaving issue; Palmeda G. Schwartz, daughter of the testator, died August 25, 1950, leaving issue; Lucy G. Gomes, daughter of the testator, died May 9, 1955, leaving issue; Maria G. Faria Kilburn, daughter of the testator, died August 27, 1955, without issue; and Joseph G. Faria, son of the testator, is still surviving.

5. Prior to the death of Arthur G. Faria on May 7, 1942, the income of the trust estate was divided into eight equal shares and distributed to the surviving children of the testator and to the issue of the testator's deceased children.

6. Following the death of Arthur G. Faria, and continuing until shortly before the filing of the complaint herein, the share of income to which Arthur G. Faria would have been entitled had he continued to survive was divided equally among the surviving children of the testator and the issue of the testator's deceased children, including the issue of Luiz Gomes Faria and Adelaid G. Cabral.

7. On July 10, 1945, an order was entered herein approving the accounts of the predecessor trustee.

8. In respect to the distribution of a share of income of a child of the testator who dies without issue, the testator's will provides as follows:

"in case of the death of any of my said children without issue living at the time, then, and in that event his part or share of said income shall be divided equally amongst my surviving children, but if any of my said children shall depart this life leaving issue him surviving, such issue shall be entitled to and shall receive the part or share of said net income to which his or her parent was entitled during his or her life time."

9. Following the death of Maria G. Faria Kilburn on August 27, 1955, plaintiff reasonably entertained a doubt as to whether under the testator's will, following the deaths of Arthur G. Faria

and Maria G. Faria Kilburn, the shares of income to which they would have been entitled had they continued to survive were payable only to the testator's surviving children, or whether issue of the testator's deceased children should also participate in said shares of income.

10. Jose Gomes Faria in his will expressed an intent to treat all of his children equally on a per stirpital basis and intended that the issue of his deceased children should in all events receive the income that their parents would have received had their parents continued to survive.

### CONCLUSIONS OF LAW

1. The order entered herein July 10, 1945, approving the final account of the predecessor trustee Lawrence Santos is res judicata as to all payments shown by said account.

2. The plaintiff trustee should be instructed that under the will of Jose Gomes Faria, deceased, on the death of one of the testator's children without issue, the income to which that child would have been entitled had he or she continued to survive is payable to those who are then surviving of the testator's children and, also, of the issue of any of the testator's children who are then dead, such issue taking per stirpes by right of representation in each generation, and that, therefore, the share of income to which Arthur G. Faria was entitled prior to his death on May 7, 1942, was immediately following his death payable in equal shares to those who were then surviving of the children of the testator and of the issue of Luiz Gomes Faria and Adelaid G. Cabral who were then dead, such issue taking per stirpes by right of representation in each generation, and the share of income to which Maria G. Faria Kilburn was entitled prior to her death on August 27, 1955, was immediately following her death payable in equal shares to Joseph G. Faria and to those who were then surviving of the issue of Luiz Gomes Faria, Adelaid G. Cabral, George G. Faria, Lucy G. Gomes and Palmeda G. Schwartz, such issue taking per stirpes by right of representation in each generation.