(No. 37238.

JAY COMISKY *et al.*, Appellees, *vs.* PHILIP MOORE *et al.*, Appellants.

*Opinion filed Nov. 30, 1962.—Rehearing denied Jan. 28, 1963.*

CARL POMERANCE, of Chicago, and T. EMMETT WHITE, of Ottawa, for appellants.

BERRY & O'CONOR, of Streator, and POOL & LANGER, of Ottawa, for appellees.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This case involves a suit to partition two farms owned by Owen Moore at the time of his death on June 4, 1898, and devised by him in his will. The construction of this will determines their present ownership. The circuit court of La Salle County entered a decree in accordance with the plaintiffs' theory that "surviving children" as used in the will referred to those children surviving the decedent, rather than only to those that survived an intermediate life tenant, the defendants' theory. A freehold being involved, defendants appealed directly to this court.

At the time the will was executed, September 26, 1895, Owen Moore had twelve children, seven sons and five daughters, and four grandchildren ranging in age from four months to two years. Two sons and one daughter were married; one son, Stephen Moore, was studying for the priesthood and one daughter was studying to become a nun. Owen Moore was survived by his widow, Barbara Moore, and by his twelve children.

Owen Moore devised a separate 160-acre farm to each of his seven sons for life( except that the life estate of the youngest son, Philip, was subject to a prior life estate in decedent's widow), using almost identical provisions as follows:

> "* * * to have and to hold the same for and during the term of his natural life, with remainder to his children in fee, but if he should die leaving no lawful children, then the same shall revert to my estate and be equally divided among my surviving children, they to each take a life estate in their several parts so reverting if any, with remainder in fee to their children * * *."

Each of his daughters was given a lifetime annuity in amounts varying from $100 to $200 that were expressly made liens on all of his farms. Each son was directed to contribute ratably towards each daughter's lifetime annuity. Except for the contingent interests in each of the seven farms in the event of the death of a son without leaving lawful children, no provision whatever was made for his daughters' children.

This case involves the question of the present ownership of two of the 160-acre farms, one devised to Thomas O. Moore for life and the other to Stephen N. Moore for life, both under substantially identical provisions as quoted above.

Thomas O. Moore died on April 9, 1934, never having been married and never having had or adopted a child or children. Surviving him were nine brothers and sisters, one brother and one sister having predeceased him, each of whom left them surviving various children.

Another son of Owen Moore, Stephen N. Moore, died on December 25, 1959, never having been married and never having had or adopted a child or children. He was survived by his sister, Catherine Giering and his brother Philip Moore. All of the other original twelve children of Owen Moore predeceased Stephen N. Moore. Three of the brothers predeceased him leaving children, one brother pre-

deceased him leaving no children, one sister predeceased him leaving children and three sisters predeceased him leaving no children.

At the time of the death of Stephen N. Moore his only surviving sister, Catherine Giering, had one child and his only surviving brother, Philip Moore, had five children; these persons (except for one of Philip Moore's children), are the appellants in this cause. It is their contention that the two farms in question should, in view of the life tenants' deaths without leaving lawful children, be equally divided for life among only those brothers and sisters who were living at the time of their deaths in 1934 and 1959 respectively. The remainders in fee should, under their theory, go to only those children of the surviving brothers and sisters. That is, appellants construe the language "but if he should die leaving no lawful children, then the same shall revert to my estate and be equally divided among my surviving children, they to each take a life estate in their several parts so reverting if any, with remainder in fee to their children" as if decedent was using the word "surviving" in reference to the termination of the life estate.

Appellees, who are the children and grandchildren of those brothers and sisters who predeceased Stephen N. Moore, (except that one of Philip Moore's children is also an appellee), on the other hand, contend that "surviving" referred to surviving the testator. Under this interpretation all of the testator's grandchildren would share in these two farms on a *per stirpes* basis.

The will of Owen Moore has been previously construed in accordance with appellees' theory by the circuit court of La Salle County in a proceeding begun on March 4, 1936, following the death of Thomas O. Moore. All of the then living children of Owen Moore and all of the children of deceased children of Owen Moore were parties to this suit and were before the court. All of these persons are bound by that decree under the doctrine of *res judicata* as to the

Thomas O. Moore farm. Appellants contend that the earlier decree is totally void because certain necessary parties (the children of living children of Owen Moore) were not before the court. This argument cannot now be raised collaterally. (See, *Crescio* v. *Crescio,* 365 Ill. 393.) However, that decree involved only those appellants (the two surviving children of Owen Moore,) who are now entitled to undivided life estates. Their children, who are also appellants in this case, in whom at least a portion of the fee was vested, were not made parties to that suit and in their brief appellees concede that these grandchildren of Owen Moore are not bound by the decree entered therein.

Appellees do contend, however, that even these grandchildren who have vested remainders in fee are now bound by the practical construction placed upon the will by the family. The children of those two of Owen Moore's children who predeceased Thomas O. Moore have, since 1936, been receiving their full *per stirpital* shares of the income from the Thomas O. Moore farm. This practice followed the construction of the will of Owen Moore adopted in the prior suit and, appellees contend, was acquiesced in even by those defendants in this case who were not parties to that suit. This, it is contended, constituted a binding practical construction of the will. (See, *Bibo* v. *Bibo,* 397 Ill. 505). This argument overlooks the fact that these appellants, as holders of remainder interests subject to outstanding life estates in their parents, were not affected by this practical construction, which admittedly dealt with the distribution of rental income only. Such construction cannot, therefore, be considered binding upon them.

The determination of the time of reference intended by the testator where words of survivorship are used in a devise or bequest of a remainder, after an intervening life estate, is a subject that has caused much difficulty among the courts. Several jurisdictions have taken the position that, presumptively, these words refer to the death of the testator. (*Estate*

*of Nass,* 320 Pa. 380; *Aldred* v. *Sylvester,* 184 Ind. 542; *Sturgis* v. *Sturgis,* 242 Mich. 52.) This rule is generally founded upon policies favoring the early vesting of estates (*Sturgis* v. *Sturgis,* 242 Mich. 52), and, where the limitation over at the termination of the life estate is to lineals, against a construction that would result in the disinheritance of an heir. (*Estate of Nass,* 320 Pa. 380). These policies have been recognized and, under certain circumstances, followed by this court. (See, *e.g., Pontius* v. *Conrad,* 317 Ill. 241; *Hartwick* v. *Heberling,* 364 Ill. 523.) Although at one time the Illinois law in this area appeared somewhat uncertain (compare *Thompson* v. *Adams,* 205 Ill. 552, with *Murphy* v. *Westhoff,* 386 Ill. 136), it is now well settled in this State that words of survivorship in the limitation of a remainder presumptively have reference to the termination of the intermediate estate. *Harris Trust & Savings Bank* v. *Jackson,* 412 Ill. 261 (1952); *O'Connell* v. *Gaffney,* 23 Ill.2d 611.

However, this is only a rule of construction, founded upon the presumed intent of the testator, and an intent expressed by the testator that the words of survivorship should be referred to the date of his death will be given effect. We feel that such an intent has been expressed in this case.

The testator devised a life estate in each farm to each son, with a remainder over to their children in fee. It was provided that if the life tenant should die leaving no lawful children "then the same shall revert to my estate and be equally divided between my surviving children." This language clearly indicates that the decedent was thinking of at least his estate as of the date of his death and not the death of the life tenant. "Revert to my estate" has been held to mean "return to the aggregate of all the property which I may leave at my death." *Downing* v. *Grigsby,* 251 Ill. 568.

Appellants concede that had the testator terminated the clause at this point appellees' theory would possibly be justifiable. However, they take the position that any doubt as to

the testator's intent disappears when he continues "they to each take a life estate in their several parts so reverting." The fact that only those children of Owen Moore that actually survive the life tenant can possibly take a new life estate upon his death without leaving lawful children indicates, according to appellants' theory, that the testator must have intended for the date of the life tenant's death to be used in determining his surviving children.

Appellants' interpretation results, of course, in a situation where the only grandchildren of decedent who were intended to be benefited by this remainder in fee were those whose parents lived longer than the first named life tenant. We cannot agree with this reasoning. In each of the seven devises of testator's farms "revert" is used on two occasions, once before providing for new life estates in his surviving children and once afterwards. He provides that the property shall *revert* to his estate and that his surviving children shall take life estates in their several parts so *reverting*. It seems quite unlikely that in one sentence the testator would have been referring first to his estate as of his date of death, then to his surviving children as of the death of a life tenant, and finally back again to his estate as of the date of death.

On the contrary, it appears clear that when the testator referred to his estate as of the date of his death he must have also been considering his surviving children, all of whom were specifically named in the will, as of that date. Of course, if at the death of a life tenant without leaving lawful children another child has already died, then that share in the remainder would simply be accelerated and vest immediately in fee in his children.

Appellants' argument that appellees failed to file an answer to appellants' counterclaim and therefore admitted the allegations in said counterclaim cannot now be raised. Appellants filed a reply to a copy of appellees' answer furnished them and proceeded to a trial on the basis of the

pleadings as filed. They are, therefore, precluded from contending on appeal that proper issues were not created by the pleadings. *Pienta* v. *Chicago City Railway Co.* 284 Ill. 246.

The decree of the circuit court of La Salle County is affirmed.

*Decree affirmed.*