In the Matter of the Estate of Charles Oliver Leake, Deceased.

James Leake and William Stephenson, Individually, and as Executors Under the Last Will and Testament of Charles Oliver Leake, Deceased, Plaintiffs-Appellees, v. James A. Million, Edna Haigh, Allie Winchester, The Salvation Army, Opal Stephenson King, et al., Defendants, James A. Million, et al., Defendants-Appellants.

Gen. No. 10,959.

Fourth District.

March 20, 1969.

Cohn, Cohn and Korein, of East St. Louis (Joseph Cohn, of counsel), for appellants.

Harry G. Story and William T. Wilson, of Jacksonville, for appellees.

TRAPP, P. J.

Defendants, James A. Million, Edna Haigh and Allie Winchester, who are the sole heirs of Charles Oliver Leake, testator, appeal from a decree of the Circuit Court, construing the will of the testator on complaint of the plaintiff executors, James Leake and William Stephenson.

In substance the will in question first left all property to the testator's wife, and then provided:

> "Item FOUR: In the event my wife should predecease me, then and in that event I give and bequeath all the rest and residue of my estate to be divided as follows:
>
> "To The Salvation Army, a one-seventh part;
> "To Mollie Harney, a one-fourteenth part;
> "To Minnie Young, a one-fourteenth part;
> "To Charles Bramham, a one-seventh part;
> "To Nettie Leake, a one-seventh part;
> "To William Stephenson, a one-seventh part;
> "To James Leake, a one-seventh part;
> "To Opal Stephenson, a one-seventh part;
> "In case of the death of MOLLIE HARNEY, MINNIE YOUNG, or either of them, then and in that event the share of the respective parties shall revert back to my residuary estate, and be divided equally among the remaining heirs of my estate. In case of the death of NETTIE LEAKE, JAMES LEAKE and OPAL STEPHENSON, their respective shares shall be distributed among the heirs of said decedents the same as they shall distribute their own estate."

347

The testator died July 17, 1964, leaving the will dated July 17, 1944, from which the foregoing excerpt is taken. None of the named beneficiaries were heirs of the testator. The testator's wife, and residuary beneficiaries, Mollie Harney, Minnie Young, Charles Bramham and Nettie Leake, all predeceased the testator. The existing residuary beneficiaries at the death of the testator were The Salvation Army, William Stephenson, James Leake and Opal Stephenson.

The deceased residuary beneficiary, Nettie Leake, died intestate and left descendants who survived the testator. The trial court entered a decree holding that the one-seventh share of Nettie Leake passed to her heirs.

The court held that the one-seventh share of Charles Bramham passed by section 49 of the Probate Act, chapter 3, § 49, Ill Rev Stats 1965, to the remaining residuary beneficiaries in equal shares. The decree also provided that by virtue of the trial court's construction of the will, the respective shares of Mollie Harney and Minnie Young passed to the residuary beneficiaries in equal shares and that the heirs at law of the testator, James A. Million, Edna Haigh and Allie Winchester take nothing under the will and have no interest in the estate of Charles Oliver Leake.

Defendants first contend that there is no ambiguity in the will requiring construction, and second that the gift over in the event of the prior deaths of Mollie Harney and Minnie Young is clearly to the heirs at law of the testator.

██ Since the beneficiaries of the residuary estate are in no instance heirs of the testator, it is not possible to have the share of Mollie Harney or Minnie Young "revert back to my residuary estate" and at the same time be given to the testator's heirs at law, who are in no instance, included in the residuary estate. The question whether the will required a construction justifies no extended discussion. It did require construction.

In support of their contention that the testator intended the lapsed gifts to Mollie Harney and Minnie Young to go to the heirs at law, defendants argue that to give the said shares to the residuary beneficiaries would render meaningless the following language:

> "Then and in that event the share of the respective parties shall revert back to my residuary estate and be divided equally among the remaining heirs of my estate."

The reason given for this position is that under the antilapse statute, chapter 3, § 49, Ill Rev Stats 1965, these shares would have gone to the residuary estate without the quoted provision and, therefore, the result reached by the court makes the provision unnecessary and therefore meaningless. They also argue that the primary meaning of the word "heirs" is those persons who would take under the descent statute, and in the absence of compelling reasons otherwise the words must be construed to mean heirs at law as defined by said statute.

The first contention is not convincing for several reasons. It presupposes an intention based upon an antilapse statute which did not exist in this form when the will was drawn. The provision of the antilapse statute in 1944 was confined to descendants of the testator. At the time the will was executed there would have been an intestacy except for Item FOUR of the will. Further, defendants' analysis is confined to one aspect of the provisions of Item FOUR of the will. A different provision was made in the case of the death of other legatees, i. e., Nettie Leake, James Leake and Opal Stephenson. In their case the share was to go to their heirs "the same as they shall distribute their own estate." The shares of these latter persons would not have been handled in the same manner by the antilapse statute in effect at the time of the execution of the will, or the one in effect at the time

of death. For some reason the testator made no provision for the prior death of Charles Bramham or William Stephenson. Finally, if the word heirs in the Item FOUR of the will were to be taken to mean heirs at law, it would render meaningless the provisions therein that "the share of the respective parties shall revert back to my residuary estate."

Defendants cite numerous Illinois cases which they say sustain the principle that the primary meaning of the word heirs is heirs at law as defined by the statute of descent, and that without compelling evidence from the language of the will or from extrinsic sources, the primary meaning must be accepted. Dillman v. Dillman, 409 Ill 494 at 502, 100 NE2d 567, supports this general statement. Also, in citing In re Estate of Fahnestock, 384 Ill 26, 50 NE2d 733, it states: "On the other hand, the technical meaning of the word 'heirs' will not be given effect to defeat the obvious intention of a testator." Many of the cases cited by defendants in which the question of the meaning of the word "heirs" arises, are cases in which the question really is whether the word heirs in the particular context is a word of purchase, that is naming those who take, or a word of limitation, meaning the indefinite succession of descendants with the resulting application of the Rule in Shelley's case to establish a fee simple estate in the named life tenant. See Lydick v. Tate, 380 Ill 616, 44 NE2d 583; Havely v. Comerford, 343 Ill 90, 174 NE 830; Fay v. Fay, 336 Ill 299, 168 NE 359 and Meeker v. Steepleton, 309 Ill 337, 141 NE 158.

It has been stated by the Supreme Court of Illinois in many cases and in many forms that the paramount rule in construction of a will is to ascertain and give effect to the intention of the testator. Continental Illinois Nat. Bank & Trust Co. v. Harris, 359 Ill 86 at 95, 194 NE 250. In Bowe-Parker, Page on Wills, Vol 4, p 421, § 34.8, recognition is given to a secondary meaning of heirs when dictated by the context as follows:

"Unless the context of the will or the surrounding circumstances show a contrary intention, 'heirs' is used in its technical or prima facie meaning, and not in the secondary meaning of devisees or legatees. However, the context may show that the word 'heirs' means devisees or legatees."

In Thompson on Wills, 3rd ed, p 414, § 265, it is said:

"It is held that the word 'heirs' when used in a will is flexible and should be so construed as to give effect to the intention of the testator as manifested by the will."

and on p 418, § 267:

"In order to give effect to the intention of the testator as gathered from the context of the will and the surrounding circumstances, the word 'heirs' may be construed to mean beneficiaries previously mentioned in the will as devisees or legatees, even where such beneficiaries are not in fact heirs, if the context shows an intention to include them."

See also 36 Ill Law and Practice, Wills, p 334, § 244.

An outstanding circumstance in respect to the present will is the fact that none of the defendants, who are now the sole heirs, is a named beneficiary in the will under any contingency. There is evident a plan on the part of the testator to provide for the contingency of the death of certain named beneficiaries. This plan, so far as it is executed, divides these beneficiaries into two groups. As to one group the share is left to the heirs of the beneficiaries in the manner that the beneficiaries provide for distribution of their own estates. As to another group the share is to revert to the residuary estate. The language of the clause is inconsistent with any intention of the testator that his heirs, in the statutory meaning, are to take under any combination of events.

■ Our courts have also subscribed to the principle that where the same words are used in different parts of a will they should, if possible, be given the same meaning. Abrahams v. Sanders, 274 Ill 452 at 458, 113 NE 737. Here in Item FOUR of the will, the testator provided as to the contingency of death of Nettie Leake and others that "their respective shares shall be distributed among the heirs of said descendants the same as they shall distribute their own estate." Certainly in this clause the testator was equating the word "heirs" to distributees.

The testator, in Item FOUR in the introductory portion, gave and bequeathed "all the rest and residue of my estate" to nonheirs. In the same item of the clause in question he provided that the "shares of the respective parties shall revert back to my residuary estate." We cannot think that "my residuary estate" in the second portion of the item meant anything different from "all the rest and residue of my estate" in the first portion. Since the contingency concerned the absence of one beneficiary of the gifts of the residue, the provision that the share should revert back to "my residuary estate" would seem to indicate that the testator was referring to the same residuary provision that he had just established. Some significance can be attributed to "revert back" in that such reference is to something that was placed somewhere and had been taken away. The term "revert to my estate" has been held to mean "return to the aggregate of all the property which I may leave at my death." Downing v. Grigsby, 251 Ill 568, 96 NE 513 and Comisky v. Moore, 26 Ill2d 494 at 499, 187 NE2d 256. The shares provided for Mollie Harney and Minnie Young had come from the residue of the estate and such was the only place to which they could "return."

We cannot overlook the fact that the word "heirs" does not stand alone. The subject matter of the clause is the contingency of the loss of one or more members of a

named group, and the provision is that such share "shall revert back to my residuary estate and be equally divided among the *remaining* heirs of my estate." The normal construction would be that when the testator is speaking of a group he has named and of the loss of a member of the group, his reference to those "remaining" is a reference to the same group. It is also logical to assume that since the testator is speaking of a group when he uses the term "revert back" he means the same group because it is difficult to conceive a share literally reverting back to a place it had never been. See Johnson v. Askey, 190 Ill 58, 60 NE 76.

In other jurisdictions where the context created by previous mention of persons as devisees or legatees indicated it, a subsequent reference to "my above named heirs," or the like, has been construed to mean my above named devisees or legatees. Eisman v. Poindexter, 52 Ind 401 (1876). See also cases cited in 70 ALR 583. In re Widmeyer, 28 Pittsb LJNS (Pa) 208, noted in the annotation, included certain churches in a residuary gift providing for division among "all the aforesaid heirs herein mentioned."

█ It is a fair judgment the testator's will disclosed a simple plan. This first left everything to his wife and if she predeceased him to certain named beneficiaries, none of whom were, in fact, heirs of the testator. It was his further intention in the event of lapse of some of the gifts to give the share to such persons as the beneficiary provided for in his own estate, and in the event of lapse of other gifts to redistribute among the remaining residuary beneficiaries. We would do violence to the direction to revert back to the residuary estate, if we were to assign those lapsed shares to persons not in the residuary clause. We do not think that adopting a secondary meaning of heirs as beneficiaries does violence to the context, especially where in the same provision the word

353

heirs in one instance would necessarily mean distributees.

The decree of the Circuit Court is affirmed.

Affirmed.

SMITH and CRAVEN, JJ., concur.