BISHOP TRUST COMPANY, LIMITED, TRUSTEE UNDER THE WILL AND OF THE ESTATE OF ALFRED HOCKING, DECEASED, *v.* MARY GENEVIEVE JACOBS, HARRY EDWARD HOFFMAN, INDIVIDUALLY AND AS COEXECUTOR OF THE LAST WILL AND ESTATE OF HARRIET SYBIL HOCKING, HAZEL MAUD MUNTER, FLORENCE EMILY HILL, BARBARA MUNTER, CYNTHIA MARY JACOBS, JANICE ANNE JACOBS, NANCY HUNTINGTON JACOBS, LAWSON TRAPHAGEN HILL, JR., AND CYNTHIA PERRY HILL, MINORS.

No. 2516.

ARGUED NOVEMBER 6, 9, 1942.     DECIDED DECEMBER 23, 1942.

KEMP, C. J., PETERS, J., AND CIRCUIT JUDGE BROOKS IN PLACE OF LE BARON, J., DISQUALIFIED.

OPINION OF THE COURT BY PETERS, J.

This is a bill for instructions brought by the trustee under the will and of the estate of Alfred Hocking, deceased.

By the second paragraph of the will the testator devised certain real estate to the trustee for the following uses and purposes: "(a) To pay out of the net income thereof (a) to my sister, KATIE CRABB, * * * an annuity of NINE HUNDRED DOLLARS ($900.00) per annum, in stallments [sic] of SEVENTY-FIVE DOLLARS ($75.00) per month, during her lifetime, commencing thirty (30) days after the date of my death; and after her death or, if she shall predecease me, after my death to pay such annuity to her daughter, MABEL CRABB, during her lifetime, (b) to my sister, MRS ANNIE IVEY * * * an annuity of NINE HUNDRED DOLLARS ($900.00) per annum, in installments of SEVENTY-FIVE DOLLARS ($75.00) per month during her lifetime, commencing thirty (30) days after the date of my death; and after her death, or, if she shall predecease me, after my death, to pay such annuity to her son, RICHARD IVEY, during his life; and, subject to the payments aforesaid, to pay to my wife, HARRIET SYBIL HOCKING, one-half (½) of the balance of said net income during her lifetime,

and to pay the remaining one-half (½) of the balance of said net income during the lifetime of my said wife to my daughter, MARY GENEVIEVE JACOBS * * *; PROVIDED, HOWEVER, that if my said daughter shall predecease me leaving a child or children who shall survive me, then and in any such case such child or children (being my grandchild or grandchildren) shall take the share of said net income which their mother would have received if she had survived me, in equal shares if more than one, until the distribution date hereinafter specified. I direct that in case said KATIE CRABB and her said daughter and/or said ANNIE IVEY and her said son shall die before the distribution date hereinafter specified, then and in any such case the income payable to them under the provisions of this paragraph shall be divided between my wife, HARRIET SYBIL HOCKING, and my daughter, MARY GENEVIEVE JACOBS or her children as hereinbefore provided, in equal shares until the distribution date hereinafter specified; PROVIDED, HOWEVER, that in case my said wife shall predecease my said daughter, all of the income payable to my said wife under the foregoing provisions shall be paid to my said daughter until the distribution date hereinafter specified, and in case my said daughter shall die before said distribution date all of the income payable to her under the foregoing provisions shall be paid to her child or children, in equal shares if more than one, until said distribution date."

The trustee, by the succeeding paragraph (b) of the second clause of the will, was directed upon the death of the last survivor of Katie Crabb, her daughter Mabel Crabb, Annie Ivey, her son Richard Ivey, and Harriet Sybil Hocking, or upon the death of the testator, in case he should survive all of them, whichever of said events should last occur in point of time, to convey, transfer, set over and deliver all of the property then subject to the trust to

the following-named persons, in the respective proportions indicated, *viz.*: Mary Genevieve Jacobs five-eighths, Hazel Maud Munter one-eighth, Harry Edward Hoffman one-eighth, and Florence Emily Hill one-eighth, with limitation over to their respective issue per stirpes by right of representation in the event any of the devisees named failing to survive the period of vesting, and in the event of no issue living at said distribution date, then the share which any such decedent, or his or her issue, would have received under the terms of the will to be divided equally among the survivors of Mary Genevieve Jacobs, Hazel Maud Munter, Harry Edward Hoffman and Florence Emily Hill, and/or their respective issue, absolutely and in fee simple.

The testator, by paragraph (e) of the second clause of his will, provided that no title or interest in the money or other property composing said trust estate or any income accruing thereon should vest in any beneficiary of the trust during its continuance, nor should any beneficiary acquire any right in or title to any installments or installment of income otherwise than by and through the actual payment of each installment respectively by the trustee of the trust estate, and a receipt therefor in each case by the beneficiary or the natural guardian or legally appointed guardian of any such beneficiary who is a minor or an incompetent person, nor should any beneficiary have any right or power by draft, assignment or otherwise to anticipate or to mortgage or otherwise encumber in advance any installments or installment of income, nor to give orders in advance upon the trustee for any installments or installment of income; nor should any trustee in bankruptcy of any beneficiary have or take any right to or interest in any property or income distributable by the terms of the will prior to the actual payment or distribution thereof to such beneficiary upon his or her individual receipt.

The testator was survived by all the annuitants, both present and prospective, by his wife, Harriet Sybil Hocking, by his daughter, Mary Genevieve Jacobs, by three grandchildren, minor daughters of Mary Genevieve Jacobs, and by all the remaindermen. The widow, Harriet Sybil Hocking, has since died testate.

The trustee, in its bill, alleged that the will of its decedent contained no provision for the disposition, after the death of Harriet Sybil Hocking, of that share of the net income directed to be paid to Mary Genevieve Jacobs during the lifetime of the widow; that it was advised by counsel that the will of its decedent was not certain and definite relative to the proper disposition of the said remaining part of said net income, and being in doubt as to its rights and liabilities in the premises, and what its conduct should be in so far as pertained to the disposition of said share of income accruing from the trust, sought the instructions and direction of the court in that regard; in the meantime said income subject to doubt being held by it awaiting the instructions of the court.

The concrete question of law upon which the trustee requested the instructions of the court was whether the testator, in the absence of specific provision therefor, by the direction "to pay the remaining one-half (½) of the balance of said net income during the lifetime of my said wife to my daughter," did thereby dispose after the death of the wife of the testator of the share of the net income directed to be paid to his daughter during the lifetime of his wife.

Harry Edward Hoffman as coexecutor of the will of Harriet Sybil Hocking, deceased, by his answer, denied that the will of the testator, Alfred Hocking, was uncertain or indefinite relative to the proper disposition after the death of the testator of the one half of net trust income payable to respondent, Mary Genevieve Jacobs, during the

lifetime of the widow, Harriet Sybil Hocking; and averred (a) that there was no provision or wording to be found in the testamentary trust set forth in the second paragraph of the will of the testator affecting any disposition after the death of Harriet Sybil Hocking of the one-half net income distributable to respondent, Mary Genevieve Jacobs, during the lifetime of the widow, Harriet Sybil Hocking; (b) that the provisions of trust with respect to said one-half net income failed upon the death of said Harriet Sybil Hocking; and (c) that thereupon a resulting trust arose with respect to and which governed the distribution of such income for the period between the time of death of Harriet Sybil Hocking and the termination of said testamentary trust, with the petitioner holding as trustee for the use and benefit of the devisees and distributees of the said Harriet Sybil Hocking, the residuary legatee under the will of the testator, Alfred Hocking, deceased.

Mary Genevieve Jacobs, by her answer, alleged that the will of the testator taken as a whole showed that the testator intended to dispose of his entire estate and the income to accrue therefrom, and that a proper interpretation of the language used in the will disclosed the intent of the testator to have been that from and after the death of Harriet Sybil Hocking respondent should have the entire net income derived from the property devised in trust over and above the amount required to pay the annuities in said will mentioned, and prayed that the petitioner be advised and instructed: (1) that the proper interpretation of the will and of the language therein used with reference to the income derived from the property devised to the petitioner in trust shows it to have been the intent of the testator, after the payment of the annuities therein mentioned, to give the "remaining one-half" of the net income to respondent so long as she shall live, while the trust continues; or, if not so given, (2) that then, by necessary

implication arising out of the language used in said will and in order to effect the testator's intention, said payment of the said income became and is now payable to this respondent; or, in case said share of said income was not so disposed of by said will, (3) that, upon the death of said Harriet Sybil Hocking, it became a resulting trust of said share of said income pursuant to which respondent, as the sole heir at law of said Alfred Hocking, became and is now entitled to receive the same.

The Jacobs minors, by their answer, took the position that that share of the net income of the trust identified and described in the will as "the remaining one-half (½) of the balance of said net income during the lifetime of Harriet Sybil Hocking," *i.e.*, the one half which during her lifetime, but not thereafter, was the remaining one half of that balance, was under the terms of the will of the testator payable to Mary Genevieve Jacobs for the duration of the trust should she so long live, for the reasons: (a) that in and by the terms of paragraph (a) of the second clause of his will the testator intended to and did dispose completely and throughout the entire duration of the trust of the entire amount of the net income, in the manner following: (1) after making provision for lapsed annuities during the duration of the trust, (2) the testator made an equal division into two one-half shares of the entire balance of said net income by directing that one half thereof should be paid to his wife during her lifetime and that the one half thereof remaining during her lifetime should be paid to his daughter, subject to the limitations expressed in the first, second and third provisos of said paragraph; (b) that by the second proviso (*i.e.*, the limitation over to the daughter in the event of the death of the wife, until the distribution date thereinafter specified), the decedent meant to and did limit upon the lifetime of his wife his said division of said balance of net income; and meant to

and did render all, instead of only half, of said entire balance payable to his daughter from and after the death of his wife and until said distribution date; and meant to and did thereby in the contingency specified in said second proviso merge and extinguish as separate entities both of said shares in said balance; and meant to and did thereby render inapplicable and inappropriate to either of said shares the term "remaining" from and after the happening of the latter contingency—which has now occurred; (c) that by the wording of paragraph (a) of the second clause of the will directing payment to his wife and daughter of the respective halves of the net income, and particularly by interposing as he therein did the participle "remaining" between the adverbial phrase "during the lifetime of my said wife" and the infinitive "to pay," the testator intended to cause the latter phrase to be read as modifying and qualifying said participle "remaining" and not said infinitive; and intended to qualify said participle "remaining" to accord with the sense and effect as aforesaid of said second proviso; (d) that although the testator had included in said paragraph (a) of his will explicit provision for lapsed annuities and limitations over in the event of the death of Harriet Sybil Hocking and Mary Genevieve Jacobs, in case of the death of either of them before the distribution date, he omitted to include in his will any provision respecting the payment of the remaining one half of said balance, except as aforesaid, because by his wording he intended to and did provide that said remaining one half of said balance should be paid to the said Mary Genevieve Jacobs (or her minor children), without any limitation of time except the duration of the trust; (e) that by the limitations upon the duration of the trust and by the terms of the second clause of the will, the testator intended to and did vest in the minor children of Mary Genevieve Jacobs, contingent upon the death of their moth-

er at any time before said distribution date, the right to receive and take in equal shares until said distribution date; (1) in any event from the time of their mother's death or after the death of the testator, whichever death should last occur, one half of the balance of said net income and one half of the amount of any such annuity so lapsed; (2) in the event which is specified in said second proviso and which has now occurred from the time of their mother's death until such distribution date, the other half of said balance and the other half of any such annuity so lapsed; (f) that by the directions of the payment of one half of the balance of net income to his wife and daughter, respectively, the testator gave and granted to the minor children of his daughter, Mary Genevieve Jacobs, contingent upon the death of their mother at any time prior to the distribution date, a one-half share of the balance of the net income of said trust after the payment of the two annuities; that by the language of the will in respect to lapsed annuities and the provision for the contingency of his daughter predeceasing the testator, the testator meant to and did show his true intent to be, and it was to give and grant to his daughter's children, contingent only upon the death of their mother, the right to have and take the latter's share as well after as during the lifetime of Harriet Sybil Hocking, and until the said distribution date; and if by said will the testator omitted expressly to give and grant to the daughter's children such contingent right to have and take such portion of the latter's share as should accrue after the death of his wife and before such distribution date, he, nevertheless, did thereby and by implication give and grant such contingent right to his daughter's children as to the latter portion; (g) that such is the only construction of the second clause of the will by which the said intent of the testator completely to dispose of all of the income of the trust throughout the entire duration thereof can be given effect.

The remaining respondents, including Harry Edward Hoffman in his individual capacity, by their respective joint answers, took the same position as Mr. Hoffman in his representative capacity as coexecutor of the will of Harriet Sybil Hocking, deceased.

A hearing was had and extrinsic evidence adduced on behalf of the respondent, Mary Genevieve Jacobs, and of her minor children, directed to the relations of the parties and the intentions of the testator at and prior to the execution of his will in the effort to assist the court in construing that portion of the will involved in the request for instructions. This evidence, however, was disregarded by the trial judge, he reaching his conclusions unassisted thereby.

The trial judge adopted the contentions of the respondent, Mary Genevieve Jacobs, and of the minor children of Mary Genevieve Jacobs, upon the construction of the will of the testator, and instructed the trustee that Mary Genevieve Jacobs was entitled to receive all the net income after the payment of the annuities derived from the trust property from and after the death of Harriet Sybil Hocking, and that it was the duty of petitioner to continue to pay the same to Mrs. Jacobs during her lifetime within the period of the trust.

A decree was entered accordingly. From this decree the respondents, other than the respondents, Mary Genevieve Jacobs, and her minor children, appealed to this court.

The appellants' specifications of error present to this court for review the same issues of law formulated by the pleadings below.

The issues of law involved upon this appeal depend for their solution not upon any isolated phrase or clause of the will of the testator but upon all its terms and provisions taken as a whole. Analyzed independently of the

remaining provisions of the will, it would appear that the bequest to the daughter Mary of the remaining one half of the balance of the net income was limited upon the life of the widow. It might be that confusion arose, due to the widow being one of the five persons upon the joint life of whom the trust was limited, and the scrivener mistakenly assumed that the trust was coterminous with her life. Attributing to the words used in the bequest to the daughter their natural meaning, and construing what the testator there said, and not distorting the language and thereby making him say that which he did not say, there was either an oversight in failing to directly dispose of the remaining one half of the balance of the net income to accrue after the death of the widow, and for the remaining duration of the trust, or the bequest assumes an added significance due to the legal effect of the remaining provisions of the will. It is immaterial which. Because the implications, necessarily arising from the remaining provisions of the trust, point so irresistibly to a bequest to the daughter Mary of one half of the net income for the duration of the trust should she so long live, and the dominant intention of the testator, gathered from the whole will, to make complete provision for the maintenance and support of his wife and daughter during the duration of the trust, are so inconsistent with any limitation upon the enjoyment by his daughter during the existence of the trust of the one half of the net income of the trust estate bequeathed to her that such implications and intention must control despite any apparent oversight, if oversight there was, to make disposition after the death of the widow of the one-half net income distributable to the daughter during the lifetime of the widow.

From the mere omission by testator to make express or direct provision for a contingency which has actually taken place, it does not necessarily follow that partial in-

testacy occurs. The testamentary disposition of property may be implied as well as express. As stated by Professor Page, "Since the courts endeavor to ascertain the intention of testator from his whole will, rather than disjointed parts thereof, and enforce this intention, if lawful, when thus ascertained, it follows that it is possible for the testator to dispose of property, not by any formal disposition in his will, but by necessary implication from his will taken as a whole."[1] Thompson puts the same proposition thus: "Since no particular form of expression is necessary to constitute a legal testamentary disposition of property, a devise or bequest may be held to exist by implication where the context requires it or where such is the manifest intention of the testator."[2]

An "implication" is an inference of something not directly declared, arising from what is expressed. The meaning and connotations of the terms "implied" or "by implication" depend upon the subject matter in connection with or concerning which they are used. Though the testamentary disposition of property may not be directly declared, it may be inferred from the intentions of the testator as expressed in his will. In construing wills, however, a bequest may be inferred only when it arises by necessary implication. The terms "necessarily implied" or "by necessary implication" are more restricted and limited in their meaning and connote not mere "natural Necessity, but so strong a Probability of Intention, that an Intention contrary to that, which is imputed to the Testator, cannot be supposed." *Wilkinson* v. *Adam*, 1 V. & B. 422, 35 Eng. Reprint 163, 180. In *Calloway* v. *Calloway*, 171 Ky. 366, 188 S. W. 410, 412, practical application of the term "by necessary implication" is expressed as follows: "In the final analysis, however, it is upon the prin-

---

[1] 2 Page, Wills (Lifetime ed.) § 930.

[2] Thompson, Wills (2d ed.) § 223, p. 288.

ciple of carrying into effect the supposed intention of the testator that all the cases of devise by implication rest. If the language employed by the testator cannot reasonably be accounted for, except upon the supposition that he intended to make a certain disposition, but through lack of learning, want of advice, inadvertence, or mistake, failed to use the legal or proper phrases, the courts will carry into effect the intention so shown by implying such disposition, unless that disposition would contravene some well-established legal rule."

Obviously, a devise or bequest by implication cannot rest upon mere conjecture. Nor may a gift by implication arise from the mere failure on the part of the testator to dispose of all of his property. But if the whole will produces the conviction that the testator must have intended an interest to be given which is not expressly given, the court must supply the defect by implication. The rule excludes implication founded "on a construction based merely upon silence, conjecture or the relationship of the parties."[3]

Of importance in determining whether a gift arises by implication or partial intestacy has occurred, is the apparent intention of the testator gathered from the language of the will as a whole to make complete disposition of the property or income involved. Of equal importance upon the same subject is whether the will as a whole manifests an intention to disinherit an heir at law or next of kin.

When a testator makes a will the reasonable or natural presumption is, unless the contrary appears,[4] that he intends to dispose of his entire estate and that he does not intend to die intestate as to any part of it. Appellees need not, however, rely upon this presumption alone. The pro-

[3] *Bailey* v. *Bailey*, 236 Mass. 244, 247, 128 N. E. 29.

[4] 2 Page, Wills (Lifetime ed.) § 926, p. 845.

visions of the will intrinsically indicate that the testator intended to dispose of all of the income to accrue from the trust estate during the period of the trust. He made ample provision for lapsed annuities, providing that any lapsed annuity should be divided between his wife and daughter or her children "until the distribution date hereinafter specified." He made complete disposition of one half of the net income by devise of successive equitable estates, *viz.*, to his wife for her life, and in the event that his widow predecease the daughter, to the daughter until the distribution date specified, and in case the daughter died before such distribution date, to her child or children until said distribution date. He similarly made complete disposition of the remaining one half of the net income of the trust estate except as it may be said that there is no direct provision to meet the contingency of the widow predeceasing the daughter during the duration of the trust. The contingency of the daughter predeceasing the testator, leaving child or children him surviving, was anticipated by a bequest of the remaining one half to such child or children until the distribution date. Further provision was made in the event of his daughter dying before the termination of the trust by a bequest of all of the income payable to her under the provisions of the second paragraph of the will to her child or children until said distribution date. It is true that a proviso generally limits the preceding general provision, but from the plurality of the reference (provisions) it clearly appears that it was the intention of the proviso to refer both to the devise to the daughter and to the provision in respect to lapsed annuities.

The proviso for the contingency of the daughter predeceasing the testator immediately follows and is directly connected with the devise to the daughter of the remaining

one half of the balance of the net income. The testator provided in this proviso that if the daughter should predecease him leaving a child or children who should survive the testator, then in any such case, such child or children should take the share of said net income which their mother would have received if she had survived the testator, until the distribution date in the second clause of the will specified. This provision necessarily implies that the estate of the daughter in the remaining one half of the balance of the net income, if she survived the testator, was limited only upon the duration of the trust;[5] otherwise the children as substitutes would not take their mother's share "until the distribution date" specified in the second clause of the will. As between the express devise, with its apparent limitation upon the life of the widow, and the proviso containing the implication of a bequest limited only by the duration of the trust, the proviso controls.

Again, the testator provided that in case his daughter should die before the distribution date all of the income payable to her under the provisions of paragraph (a) of the second clause of the will should be paid to her child or children "until said distribution date." If the estate of the daughter in the remaining one half of the balance of the net income was limited upon the life of the widow, then in the event that the widow predeceased the daughter, the grandchildren would not be entitled to receive the income from the remaining one half of the balance of the net income enjoyed by their mother during the lifetime of the widow "until said distribution date." This language necessarily implies that the interest of the daughter in the remaining one half of the balance of the net income is "until said distribution date" should she so long live, and

5 *In re Young's Will*, 270 N. Y. Supp. 817.

that in the event of her death during the period of the trust her children take a similar estate.[6]

Additional support for a gift by implication to the daughter of one half of the balance remaining of the net income for the duration of the trust is found in the apparent dominant intention of the testator to provide for the support and maintenance of his wife and daughter during the period of the trust. The annuities were of definite amounts and extremely modest. The principal of the trust is considerable. The only objects of the testator's bounty in respect to the net income from the trust are the wife and daughter, except in the event that the daughter predeceased the testator, or, having survived him, predeceased the distribution date, in either of which events the grandchildren take all that their mother would have received had she survived the contingencies named, including the interest of the widow in the event that she predeceased the daughter. No one else is mentioned as a present or prospective beneficiary of the net income to accrue from the trust. Moreover, the testator was not alone concerned with the support and maintenance of his wife and daughter during the existence of the trust but that it continue uninterruptedly during the entire period of the trust. His solicitude in this regard no doubt motivated the restraints which he imposed upon anticipation or alienation of their respective interests in both income and principal of the trust estate. It may be said that by the provisions of paragraph (e) of clause two of the will, he created spendthrift trusts for the benefit of each beneficiary.[7] An intention contrary to that which these provisions for his wife and daughter impute to the testator "cannot be supposed."

---

[6] *Culhane* v. *Fitzgibbons et al.*, 86 N. Y. Supp. 710; *Turner* v. *Kittrell*, 60 N. C. 589; *In re Keehn's Will*, 281 N. Y. Supp. 591.

[7] I Restatement, Trusts § 152(2).

Thompson says, "In construing a will the presumption is always against disinherison, and the heirs of the testator can not be disinherited upon mere conjecture, by dubious and ambiguous words, or negative words, but an intention to disinherit them must be shown clearly, either by express words or by necessary implication."[8]  In the case of *Connor* v. *Gardner*, 230 Ill. 258, 82 N. E. 640, 643, the court said:  "In construing the will such a construction should be adopted, if possible, as to prevent intestacy as to any portion of the estate.  It is always presumed that the testator did not intend to die intestate as to any part of his estate."

If the testator in this case failed, directly or expressly, to dispose of the income to accrue on the remaining one half of the balance of net income during the period of trust from the death of the widow to its termination, such failure is certainly not due to any express or implied intention to die intestate as to such income.  On the contrary the necessary implications are all the other way.

In our opinion the manifest intention of the testator was to make a gift to his daughter Mary of the remaining one half of the balance of the net income from the trust for the duration of the trust should she so long live; and assuming, but not deciding, that there is not to be found in the will of the testator any direct or express provision disposing of the said remaining one half of the balance of said net income upon the death of the widow and until the termination of the trust, such successive estate to the daughter Mary arises by necessary implication and should be given effect.

In coming to our conclusion we have confined ourselves exclusively to the terms and provisions of the will and have not considered the extrinsic evidence offered

---

8 Thompson, Wills § 222.

below and made a part of the record on appeal. Hence, the assignments of error involving the propriety of the admission of such evidence need not be considered.

The decree appealed from is affirmed.

*G. D. Crozier* (*R. J. O'Brien*, guardian ad litem for Lawson Traphagen Hill, Jr., et al., with him on the briefs) for appellees Harry Edward Hoffman, et al.

*A. G. M. Robertson* (*Robertson & Castle* on the brief) for appellee Mary Genevieve Jacobs.

*C. H. Jacobs* (also on the brief) guardian ad litem for Cynthia Mary Jacobs, et al., minors-appellees.

CONCURRING OPINION BY KEMP, C. J.

I concur in the conclusion of the majority opinion that the decree appealed from should be affirmed. I think, however, that the provisions of the will detailed in the majority opinion may more properly be considered in construing other provisions of doubtful meaning than to make out a bequest by implication.

The application of grammatical rules to the language used by the testator in providing for the payment of the remaining one half of the balance of said income to Mrs. Jacobs makes it doubtful at least whether the testator used the phrase "during the lifetime of my said wife" as a limitation upon the time Mrs. Jacobs was to receive said income or used the phrase as part of the description of the portion of the income to be paid to Mrs. Jacobs. That, however, is not the only language used by the testator· having a tendency to disclose his intention in providing for the payment of income to his daughter. The proviso immediately following the bequest to Mrs. Jacobs, which substituted the children of Mrs. Jacobs for her as income-takers in the event she predeceased the testator, disposed of said income for the duration of the trust. Also, the final proviso, which substituted Mrs. Jacobs for Mrs.

Hocking and the children of Mrs. Jacobs for her as income-takers in the event Mrs. Jacobs survived Mrs. Hocking and thereafter died at any time prior to the termination of the trust, disposed of *all* of the income payable to Mrs. Jacobs under the foregoing provisions until the distribution date. These and other provisions of the will are relied upon by counsel for Mrs. Jacobs in aid of the construction of the language used as well as to make out a bequest by implication of one half of the net income to Mrs. Jacobs for the duration of the trust, if she lives that long.

A bequest will not be implied merely to avoid intestacy. The intent must appear from the will and not be founded merely on a construction based on silence, conjecture or the relationship of the parties. (Thompson, Wills [2d ed.] § 223.)

The contingency which actually happened of Mrs. Hocking predeceasing Mrs. Jacobs was not overlooked by the testator, for in that event he provided that the income payable to Mrs. Hocking should be payable to Mrs. Jacobs. Neither did he overlook the contingency of Mrs. Jacobs surviving Mrs. Hocking and thereafter dying prior to the termination of the trust, for in that event he provided that *all* income payable to Mrs. Jacobs "under the foregoing provisions shall be paid to her child or children" until the distribution date. The use of the phrase "all income payable to her under the foregoing provisions" indicates an intention to give to his grandchildren, after the death of their mother, the income originally given to his daughter as well as that which she is to take as a substitute for the annuitants and that which, it is conceded, she is entitled to as a substitute for Mrs. Hocking. If the original gift of income to Mrs. Jacobs lapsed upon the death of Mrs. Hocking, it became undisposed of income and would have to be disposed of as such, a result inconsistent with the

testator's expressed intention to give said income to his grandchildren for the duration of the trust if his daughter survived his wife and thereafter died before the trust terminated. To carry out his plan of providing income for the group mentioned, the testator invested his trustee with the legal title to the real estate from which the money to pay the annuities and net income was to accrue. No part of the trust *res* could in any event revert to the estate of the testator. Every provision for the disposition of income, relied upon to explain the original gift to Mrs. Jacobs, tends strongly to indicate that the testator intended to dispose of all the income to accrue to the trustee from the trust *res* for the duration of the trust, and thought he had done so. All of the provisions substituting the children of Mrs. Jacobs for her as income-takers gave the income to her children for the duration of the trust, and the final proviso is so worded as to indicate an intention to apply it to all former provisions for the benefit of Mrs. Jacobs.

I think, however, the foregoing should be applied as an aid to a proper construction of the language used by the testator in bequeathing income to his daughter rather than to make out a bequest by implication. When so applied it clearly appears that it was the intention of the testator to give said income to Mrs. Jacobs for the duration of the trust, if she lives that long, with remainder to her children if she dies before the distribution date.