IN THE MATTER OF THE TRUST ESTATE
CREATED BY GRACE INGERSOLL WEILL.

No. 4377.

OCTOBER 15, 1965.

TSUKIYAMA, C. J., CASSIDY, WIRTZ,
LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY CASSIDY, J.

Grace Ingersoll Weill died on November 3, 1950. By
what is denominated "Paragraph FOURTH" of her Last
Will and Testament, executed on September 7, 1949, she
left her residuary estate in trust. By a codicil dated April
21, 1950, she amended the provisions of the trust govern-
ing the distribution of income and corpus as set out below.

"I hereby delete subparagraphs (a) and (b) of
Paragraph FOURTH of my Will, and in lieu thereof
I substitute the following subparagraphs:

554

"(a) My Trustees shall pay or use and apply the net income of my trust estate as follows: ONE-THIRD (1/3rd) to or for the use and benefit of my husband, EUGENE WEILL, for and during his lifetime; ONE-THIRD (1/3rd) to or for the benefit and account of my son, FRED A. W. McNAMARRA, for and during his lifetime or until the termination of the trust estate; and ONE-THIRD (1/3rd) in equal shares, to or for the benefit and account of my grandchildren, ROBERT GORDON McNAMARRA, JR. and BARBARA McNAMARRA KING, all of said income to be paid quarterly or monthly as to my Trustees shall seem best.

[a-2] "From and after the death of my husband, EUGENE WEILL, the ONE-THIRD (1/3rd) of the net income which was payable to him shall be paid as follows: ONE-HALF (½) to my son, FRED A. W. McNAMARRA, and ONE-HALF (½) in equal shares to those who shall be from time to time surviving of my great-grandchildren, GEORGE GORDON KEOKI RAYMOND, GRACE EUGENIE RAYMOND, AND ROBIN LOUISA RAYMOND;

[a-3] "If my said son, FRED A. W. McNAMARRA, shall die during the duration of this trust, then from and after his death, the ONE-THIRD (1/3) of the income payable to him shall be paid as follows: ONE-HALF (½) to ROBERT GORDON McNAMARRA, JR. and the other ONE-HALF (½), and should ROBERT GORDON McNAMARRA, JR. be deceased, then ALL of said one-third (1/3rd) in equal shares to those who shall be from time to time surviving of my great-grandchildren above named.

[a-4] "If either of my above named grandchildren shall die during the duration of this trust, leaving lawful issue surviving, said lawful issue shall receive, in equal shares if more than one, the share of the net in-

come which such deceased grandchild would have been entitled to receive if living, but if either of said grandchildren shall die leaving no lawful issue surviving the share of such deceased grandchild shall be paid to the surviving grandchild or to his or her issue if he or she be deceased; if both of said grandchildren shall die leaving no lawful issue surviving, then from and after the death of the survivor of said grandchildren, the share of the income which they would have received if living shall be paid to my son, FRED A. W. McNAMARRA.[1]

"(b) This trust shall cease and determine thirty (30) years from the date of my death or upon the death of the last survivor of all of the persons named in the preceding subparagraph (a) whichever shall first occur, and at said time the property comprising the trust estate together with all accumulated income shall at that time vest in and shall be transferred, conveyed and delivered by my Trustee absolutely and in fee simple, free and clear of any trusts as follows:

"ONE-HALF (½) to my son, FRED A. W. McNAMARRA;

"ONE-HALF (½), and if my said son shall be then dead, then all, in equal shares, to those who shall be then surviving of my grandchildren above named, and the lawful issue of either of them who shall then be deceased, said issue to take per stirpes and not per capita."

The principal difference made by the codicil was the elimination from the trust of certain nieces and nephews of the testatrix who were included as income takers and

---

[1] The designations "[a-2]", "[a-3]" and "[a-4]" for the three subdivisions following the one designated "(a)" are not contained in the will or the codicil. We have inserted them for convenience of reference. We will also disregard the nomenclature and punctuation in the will and call each of the four separate provisions a subparagraph in this opinion.

remaindermen in the original will. They were left specific legacies by the codicil. Subparagraphs [a-3] and [a-4] of the codicil are contained verbatim in the original will.

Robert Gordon McNamarra, Jr. and Barbara McNamarra King are children of Robert Gordon McNamarra, a son of the testatrix who had died before she executed her will. We will refer to the children as Robert Gordon, Jr. and Barbara, and to their father as Robert Gordon, Sr.

At the time the will was executed, Barbara had filed divorce proceedings against her then husband, whose surname was Raymond. The divorce decree was entered on October 3, 1949. There are three children of the marriage, George Gordon Keoki Raymond, Grace Eugenie Raymond and Robin Louisa Raymond. They will be referred to as "the Raymond children." Barbara married her present husband prior to the execution of the codicil. After the death of the testatrix, Barbara had a fourth child, David McNamarra King. Louis B. Blissard was appointed guardian ad litem for David McNamarra King individually and as a class representative of any children who might be subsequently born to Barbara.

Prior to the testatrix' death, Robert Gordon, Jr. had been single. After her death he married Harriet Markham. There are two children of this marriage, Markham Arthur McNamarra and Willa Ann McNamarra. They will be called "the McNamarra children." Robert Gordon, Jr. died on April 12, 1962. The widow (now Harriet Markham Wedeman) is the guardian of the estates of the two children.

The testatrix' other son, Fred A. W. McNamarra, referred to herein as "Fred," died on August 4, 1962. His widow, Lulu Hale McNamarra, survived him. He had no issue.

The testatrix' husband, Eugene Weill,[2] was the first

---

[2] Eugene Weill was testatrix' second husband. Her first husband was the father of Robert Gordon, Sr. and Fred.

beneficiary of the trust to die. The record does not show the time of his death other than that it was a few years after the death of the testatrix.

From Eugene Weill's death to that of Fred's the income of the trust was distributed as follows: One-half to Fred, being the one-third originally payable to him under subparagraph (a) plus one-half of the one-third formerly payable to Eugene Weill which Fred succeeded to under subparagraph [a-2] on Eugene Weill's death; one-sixth to the Raymond children, being the other half of the share formerly payable to Eugene Weill which they acquired on his death by the provisions of subparagraph [a-2]; one-sixth to Barbara, given her by subparagraph (a); and one-sixth to Robert Gordon, Jr., and after his death to the McNamarra children, being the one-sixth share given to Robert Gordon, Jr., under subparagraph (a) and to which his children succeeded on his death, by the provisions of subparagraph [a-4].

Following Fred's death, Hawaiian Trust Company, Limited, as the sole trustee, filed a bill for instructions requesting to be advised how the one-half share of income formerly payable to Fred should be distributed. The parties in interest filed answers setting forth their various claims and after hearing argument and considering memoranda of law filed on their respective behalves the trial court rendered a decision holding in part: "While it is true the provision relating to the disposition of FRED's share refers to it as 'one-third', it is evident that the Testatrix intended to dispose of all of her son's share, and the Court therefore finds that the third paragraph on page 2 [3] above quoted includes the one-sixth which FRED was receiving after the death of EUGENE WEILL—in other words, that this paragraph disposes of the one-half of the income which FRED was receiving." The court

---

[3] The subparagraph we have designated [a-3].

further concluded and held, without amplification, that, "Both the one-third of the income payable to FRED A. W. McNAMARRA during his lifetime and the one-sixth payable to him after the death of EUGENE WEILL shall be paid to the RAYMOND children."

David King through his guardian ad litem, and the McNamarra children through their guardian, have appealed from the judgment entered in accordance with the court's decision. Lulu Hale McNamarra individually and with Hawaiian Trust Company, Limited, as executors of the estate of Fred, contended in the lower court that the one-sixth additional income acquired by Fred upon the death of Eugene Weill vested in him upon the death of the testatrix, or, in the alternative, that there was an intestacy of the one-sixth interest as of the date of the testatrix' death and that one-half thereof therefore descended to Fred's estate. Neither Fred's widow nor the executors of his estate have appealed or appeared in this court.

We agree with the portion of the decision entered below holding that notwithstanding the designation in subparagraph [a-3] of Fred's share as "the ONE-THIRD (1/3) of the income payable to him," the testatrix intended to provide by her will for the transmittal upon Fred's death of all of the share of income he was entitled to before he died.

The only opposition in this court to the foregoing conclusion is by the guardian ad litem for David King. He contends that while subparagraph [a-3] makes provision for further disposition of the one-third of the income to which Fred was originally entitled, it makes no provision for the additional one-sixth share of income which Fred became entitled to on the death of Eugene Weill and that the language of subparagraph [a-3] is so clear and unambiguous in that respect that there is no room for

construction. It is claimed that the court below erred
in ruling the testatrix provided for the devolution of the
full one-half share of the income payable to Fred before
his death for the reason that: "The court may not supply
words omitted, nor may it change the words used. ONE-
THIRD does not mean ONE-THIRD plus ONE-SIXTH;
nor does ONE-THIRD mean ONE-HALF. This is not a
matter for construction or interpretation—*there simply
can be no doubt as to what 'ONE-THIRD' means.*" The
guardian ad litem's stand is that since there is no provi-
sion for devolution of the one-sixth share of the income,
"such should be accumulated into the trust principal for
ultimate disposition with the corpus or should be held on
a resulting trust to the estate of the testatrix to be paid
over to her heirs determined as of the time of Fred's
death."

If the provisions of subparagraph [a-3] could be con-
sidered independently and alone there might be substance
to the argument that the will fails to provide for the
devolution of the one-sixth additional share of income
Fred succeeded to on Eugene Weill's death. However, it
is fundamental that in construing a will or a trust to
ascertain the testator's intent, the instrument must be
considered as a whole. "[A] testator's intention is ascer-
tained from a consideration of the will as a whole and not
from its disjointed fragments." *Trust Estate of Geo. H.
Holt, Decsd.,* 42 Haw. 129, 134. See also *Hawaiian Trust
Co.* v. *Faria,* 43 Haw. 391, 400; *Estate of Deering,* 30 Haw.
217, 219; *Paiko* v. *Boeynaems,* 22 Haw. 233, 238; *Thurs-
ton* v. *Allen,* 8 Haw. 392, 401; *Zupplein* v. *Austin,* 6 Haw.
8, 10.

Further, the intent of the testator manifested from
the will as a whole will prevail even though it may be at
variance with particular words or provisions contained
in the instrument.

In *Trust Estate of Meek,* 42 Haw. 335, 347-48, quoting from *Hodgson* v. *Ambrose,* 1 Douglas 342, 99 English Reports (Full Reprint) 219, it is stated: " 'This [the testator's intent] can only be discovered by taking the whole will together. If it be apparent, I know of no case that says, a strict legal construction, or a technical sense of any words whatever, shall prevail against it; * * *.' * * * Such rule thus enunciated was recognized by Mr. Chief Justice Marshall in delivering the opinion of the court in *Smith* v. *Bell,* in the Supreme Court of the United States, in 1832. 6 Peters 69, 31 U.S. 68; likewise in the opinion of Chief Justice Allen of the Supreme Court of Hawaii, in *Harris* v. *Judd Adm.,* 3 Haw. 421, 426 (1873). It has since been recognized, observed and followed in Hawaii." Among the many precedents of this court referred to is *Bishop Trust Co.* v. *Jacobs,* 36 Haw. 314, which case well illustrates application of the basic rule that the over-all purpose and intent of a testator, gathered from his will as a whole, will prevail notwithstanding apparent inconsistencies or omissions in particular provisions of the will.

The will in the *Jacobs* case devised real property to the trustee to pay out of the net income therefrom two annuities and then, "* * * to pay to my wife, Harriet Sybyl Hocking, one-half (½) of the balance of said net income during her lifetime, and to pay the remaining one-half (½) of the balance of said net income during the lifetime of my said wife to my daughter, Mary Genevieve Jacobs." Another provision of the will provided that if the wife predeceased the daughter, then "* * * all of the income payable to my said wife under the foregoing provisions shall be paid to my said daughter until the distribution date hereinafter specified, * * *." It was contended that after the mother's death the one-half of the trust income originally payable to the daughter ceased and was

left unprovided for so that a resulting trust of one-half share of income arose for the benefit of the estate of the testator. The court held that although it would appear that the language of the bequest to the daughter, when analyzed independently, limited it to the life of the mother, the will taken as a whole showed that the testator intended to dispose of his entire estate and the income to accrue therefrom and that the entire net income after payment of the annuities should therefore be paid to the daughter from and after the death of the mother. The opinion states:

> "From the mere omission by testator to make express or direct provision for a contingency which has actually taken place, it does not necessarily follow that partial intestacy occurs. The testamentary disposition of property may be implied as well as express. As stated by Professor Page, 'Since the courts endeavor to ascertain the intention of testator from his whole will, rather than disjointed parts thereof, and enforce this intention, if lawful, when thus ascertained, it follows that it is possible for the testator to dispose of property, not by any formal disposition in his will, but by necessary implication from his will taken as a whole.' Thompson puts the same proposition thus: 'Since no particular form of expression is necessary to constitute a legal testamentary disposition of property, a devise or bequest may be held to exist by implication where the context requires it or where such is the manifest intention of the testator.'" (p. 324.)

> \* \* \* \* \*

> "When a testator makes a will the reasonable or natural presumption is, unless the contrary appears, that he intends to dispose of his entire estate and that he does not intend to die intestate as to any part of it.

Appellees need not, however, rely upon this presumption alone. The provisions of the will intrinsically indicate that the testator intended to dispose of all of the income to accrue from the trust estate during the period of the trust. * * *" (p. 326.)

\* \* \* \* \*

"* * * In construing the will such a construction should be adopted, if possible, as to prevent intestacy as to any portion of the estate. It is always presumed that the testator did not intend to die intestate as to any part of his estate." (p. 330.)

We are in accord with the trial court's reasoning that in the present case, as in the *Jacobs* case, the provisions of the will intrinsically indicate that the testatrix intended to dispose of all of the income accruing to the trust throughout the term thereof. She provided for the disposition of the entire income in the event of at least six contingencies, aside from that covered by subparagraph [a-3]. These were, the death of Eugene Weill, the death of Barbara McNamarra King with issue, her death without issue, the death of Robert G. McNamarra, Jr. with issue, his death without issue, and the death of both Barbara McNamarra King and Robert G. McNamarra, Jr. without issue.

The will provides that the trustees or trustee "shall pay or use and apply the net income of my trust estate" for the beneficiaries as directed. The normal meaning of the term "net income" in this context is all of the net income. See *Munger* v. *United States,* D. Ala., 154 F. Supp. 417.

The will specifically provides for and permits accumulation of income only as follows: "My Trustees shall have authority in their discretion to pro-rate during the year and withhold from the income received by my said trust estate an amount sufficient to pay proportionate shares

of the expenses payable by my said trust estate so that said payments of net income may be more regular and even in amount, and I also authorize my Trustees in their discretion to withhold from the net income of the trust estate an amount not in excess of five per cent (5%) during each year to be accumulated as a fund for the making of capital repairs or the construction of new improvements or for the repayment of any mortgages made by my Trustees for the erection of new improvements or the making of capital improvements." The presence of this clause in the will in and of itself tends to negative any intention of the testatrix that accumulation of any part of the net income of the trust estate should or might be made for any reason or purpose other than that specifically authorized by the clause.

Finally, it is to be noted that the presumption against intestacy or partial intestacy is a strong one. *Bertelman* v. *Kahilina,* 14 Haw. 378, 382; *Estate of Isenberg,* 28 Haw. 590, 646. As is stated in *Hackensack Trust Co.* v. *Bogert,* 24 N.J. Super. 1, 93 A.2d 402, 405: "The law abhors intestacy and presumes against it. Barrett v. Barrett, 134 N.J. Eq. 138, 34 A.2d 579 (Ch. 1943). A testator is presumed to have intended the disposition of his entire estate for the benefit of the beneficiaries named in his will. Patanska v. Kuznia, 102 N.J.Eq. 408, 141 A. 88 (Ch. 1928), affirmed on opinion below 104 N.J.Eq. 204, 145 A. 922 (E. & A. 1929). In the pursuit of this policy the courts seek the intention of the testator from a study of the will as a whole, and if from all of its provisions and clauses a desire to dispose of all of his assets can be found, an effort will be made to effectuate that purpose. And in doing so the power exists to depart from the strict wording of the will, to mold or change its language, such as, by rejecting superfluous, absurd or repugnant words or

phrases or restricting them in their application. Barrett v. Barrett, supra."

Viewing Grace Weill's will as a whole and with proper consideration and effect given to the presumption against intestacy, it appears to this court that a construction which would call for a lapse upon Fred's death of the one-sixth share of income which he had acquired on Eugene Weill's death would not be consistent with the manifest intent of the testatrix to keep the trust intact for the duration of the trust and to pay to or use for the beneficiaries throughout the whole trust period the entire net income except as to such portions thereof as the testatrix specifically authorized to be accumulated for capital improvements or for equalization of periodic payments to the income takers. We cannot but conclude that the words "the ONE-THIRD (1/3) of" were inadvertently inserted in subparagraph [a-3] and consequently they should be considered surplusage and disregarded in order to effectuate the testatrix' intent otherwise manifested in the will.

The situation presented on the point now under consideration is in our opinion, as it was in the trial court's, sufficiently comparable to that presented in *In re Akeley's Estate*, 35 Cal. 2d 26, 215 P.2d 921, to make the holding in the case pertinent. In that case the testatrix, a widow with no children or next of kin, made a will giving her residuary estate in proportions of twenty-five percent each to three charitable institutions. The court concluded that it was the intention of the testatrix to dispose of her entire estate and disregarding the specific percentages set out in the will as surplusage, held that the fourth portion of the estate was to be divided equally among the three named legatees.

See also *Henney* v. *Ertl*, 7 N.J. Super. 401, 71 A.2d 546; *Blakeslee* v. *Mansfield*, 66 Ill. App. 116; *Spathariotis* v. *Spathas' Estate*, —— Colo. ——, 398 P.2d 39.

We hold that there was no lapse or intestacy upon the death of Fred of the additional one-sixth share of income he acquired upon the death of Eugene Weill and that in determining the devolution of Fred's share of income upon his death the provisions of subparagraph [a-3] are applicable to one-half of the trust income.

As has been stated, the lower court held that Fred's one-half share of income went to the Raymond children upon his death. The rationale of the holding is not disclosed in the written decision. In addition to the ultimate conclusion of the court quoted earlier in this opinion, all that appears in the decision in that respect is the bare conclusion in the recital of facts that, "Upon the death of FRED, (Robert, Jr. being dead) 'the ONE-THIRD (1/3) of the income payable to him' becomes payable to the RAYMOND children," and the further recital, "Provision was also made for the disposition of her son, FRED's, share should he die before the trust terminated—his share was to go one-half to the grandson, ROBERT, and one-half to the RAYMOND children (the children of her granddaughter, BARBARA); and, if ROBERT be dead, then all of FRED's share was to go to the RAYMOND children."

The discussion and reasoning set forth in the decision is confined and directed to ruling on the first issue that the testatrix intended to dispose of the entire one-half share of the trust income which Fred was receiving at his death, rather than just a one-third share as specified in subparagraph [a-3]. No consideration whatsoever is given in the decision to the effect the application of the provisions of subparagraph [a-4] might have on the second issue as to whom Fred's share of income should go on his death. We are at a loss to account for this omission but, be that as it may, it is our opinion that when the provisions of subparagraph [a-4] are taken into account, as

they definitely must be, the devolution of Fred's share of income upon his death in the contingency that has occurred must be decreed to be in a manner different from that assumed by the court below and urged on behalf of the Raymond children in this court.

As far as pertinent, subparagraph [a-4] provides:

"If either of my above named grandchildren shall die during the duration of this trust, leaving lawful issue surviving, said lawful issue shall receive, in equal shares if more than one, the share of the net income which such deceased grandchild would have been entitled to receive if living."

Modified to conform to our holding that the fraction "one-third" should be considered surplusage, subparagraph [a-3] should be read as providing that at Fred's death,

"[T]he income payable to him shall be paid as follows: ONE-HALF (½) to ROBERT GORDON McNAMARRA, JR., and the other ONE-HALF (½), and should ROBERT GORDON McNAMARRA, JR. be deceased, then ALL of said [income] in equal shares to those who shall be from time to time surviving of my great-grandchildren above named."

It is contended for the Raymond children that subparagraph [a-4], "Disposes of the one-sixth (1/6) share of the income originally bequeathed to each Barbara and Robert Gordon McNamarra, Jr. (as well as any other income either of them might have been entitled to receive at the time of his or her death) in the event of several contingencies including the death of Barbara with and without issue and before and after the death of Robert Gordon McNamarra, Jr. and also the death of Robert Gordon McNamarra, Jr. with and without issue and before and after the death of Barbara." And, referring to the above quoted portion of subparagraph [a-3], it is further con-

tended on behalf of the Raymond children, "Robert Gordon McNamarra, Jr. did predecease Fred A. W. McNamarra, and according to the clear and unambiguous terms of this paragraph was not, at the time of his death, entitled to receive any of the income payable to Fred." Subparagraph [a-4] is said to have no bearing on the interpretation of subparagraph [a-3]. As has been indicated, we do not agree.

Subparagraph [a-4] is in effect a proviso and is couched in language calling, without limitation, for substitution of issue to the share of income that would have been payable to either Robert Gordon, Jr. or Barbara but for his or her death before the termination of the trust. Further, its position in the will, following, as it does, subparagraph [a-3] rather than subparagraph (a), indicates that the proviso was intended to pertain not only to the provisions of subparagraph (a) as far as they are applicable to the gifts of income made to Barbara and Robert Gordon, Jr., but also to limit the provisions of subparagraph [a-3] respecting the gift over in the event of Robert Gordon, Jr.'s death before that of Fred. See *In re Tweedie's Will,* 234 Minn. 444, 48 N.W.2d 657.

However, it is further urged in support of the trial court's ruling in favor of the Raymond children that the provision in subparagraph [a-4] for substitution of issue in the event of the death of either grandchild applies only to the share of income that the grandchild was receiving at his or her death. This appears to us to be an unduly restrictive and unwarranted interpretation of the provisions of subparagraph [a-4]. We think the language used plainly states that the issue of a deceased grandchild are entitled to receive throughout the duration of the trust, and from time to time as the parent's share might have been increased if he or she had continued to live, the share of income that their father or mother would at any time

have received "if living." We cannot read subparagraph [a-4] to mean that the issue of a grandchild are entitled to receive only that share of income their deceased parent was receiving "when living," which in effect is the interpretation claimed for the Raymond children.

The claim of the Raymond children in this court is, as the trial court held, that because Robert Gordon, Jr. died before Fred the Raymond children are now entitled to two-thirds of the trust income. The head of their family, Barbara King, receives one-sixth of the trust income. This would leave only a one-sixth share for the McNamarra children.

It is clear that under the provisions of subparagraph [a-3], if Robert Gordon, Jr. had outlived Fred he would have succeeded to one-half of the net income his uncle was receiving at the time of his death, or in other words Robert Gordon, Jr. would have attained an additional one-fourth share which, with the one-sixth share he already was entitled to, would have given him five-twelfths of the trust income. It is conceded, as it must be, that if Robert Gordon, Jr. died thereafter, even if it were only a day after the death of his uncle, his issue, the McNamarra children, would have succeeded to a five-twelfths share of the trust income. If then Robert Gordon, Jr.'s issue would receive one-half of Fred's share of income under the hypothesis where their father died after Fred's death, but would not be entitled to any of it in the contingency that has occurred of their father's death preceding Fred's, some rational explanation should be available to account for the testatrix' intention to cause such a disparity in the benefits to be accorded the two sets of her great-grandchildren based solely on the relative times of Robert Gordon, Jr.'s and Fred's deaths.

In attempting to rationalize such a disparity in treatment by the testatrix between her descendants in equal

degree it is said that because she provided for one-sixth of the estate income to go to the Raymond children from Eugene Weill's share on his death and left Robert Gordon, Jr.'s family receiving nothing from that source, "This inequality of income among heirs of equal degree characterizes her plan of income distribution and shows her understandable desire and intent to favor those loved ones whom she knew during her lifetime over unknown persons who might be born sometime in the future after her death." The argument lacks conviction. The fact that the testatrix knew and undoubtedly loved the children of her granddaughter Barbara hardly supports an inference that she did not foster a natural concern for any after born children in Robert Gordon, Jr.'s branch of her deceased son's family. The reason for the favored treatment of the Raymond childen in granting them one-half of the share of income previously going to Eugene Weill may, we believe, be much more readily assumed to have been due to the testatrix' concern over the disruption of Barbara's marriage and of her desire to directly assure and definitely provide for the support, maintenance and education of her named great-grandchildren. The testatrix apparently was unwilling to rely on their mother in that respect. Apparently, for the same reason, she by-passed Barbara while including Robert Gordon, Jr. as a recipient when providing for succession of Fred's share of income upon his death.

Obviously the death of Robert Gordon, Jr., irrespective of when it occurred, would have increased the need of his children for support and maintenance and we find no reason from anything before us to accept the proposal that the testatrix could have intended to diminish the share of the children of Robert Gordon, Jr. from the bounty of her estate upon the death of their father just because it occurred before that of Fred. To throw the entire income

received by Fred at his death to the Raymond children and ignore the needs of the McNamarra children under the circumstances that have occurred would be attributing to the testatrix something wholly unnatural and completely at odds with the solicitude for all of her descendants evident from her will taken as a whole. And in this connection it is significant that under the provisions of subparagraph (b) for the distribution of the trust corpus the testatrix divided her estate evenly between Fred and the descendants of her deceased son, Robert Gordon, Sr., with the latter's children, Robert Gordon, Jr. and Barbara, or their respective issue, taking strictly on a per stirpes basis.

The holding and what was said in *Abbott* v. *Middleton,* 21 Beav. 143, seems cogent here.

The will before the Chancery Court in the *Abbott* case gave the testator's widow an annuity for life from certain securities set apart for that purpose and provided that on her death the sums set apart would become the property of the testator's son to receive the interest therefrom for his life, and upon the son's death the principal to become the property of any child or children he might leave. Then followed a gift over in the event of the son predeceasing his mother, in the following language: "[B]ut in case of my son dying before his mother, then and in that case the principal sum to be divided between the children of my daughters the deceased *Jane Ricketts* and *Mary Paxton* and of my now surviving daughter *Eliza Middleton* (should she have any issue) in equal portions to each." The son predeceased his mother. The Chancery Court rejected the claim of the children of the daughters that the plain language of the will called for the distribution of the estate to them and decreed that the estate be distributed to the children of the testator's deceased son. The court stated, at 147:

"The first thing to be looked at is the effect of the

passage as it stands alone, and then it will be proper to consider the rest of the will, and to see how this view, to be derived from the bequest alone, is affected by the general scope and purpose of the whole will taken together. Looking at the words containing the bequest by themselves, the first thing seen is, a clear gift to the children of his son, in the first branch of the sentence, a gift which was vested in them on the death of their father. In the second branch of the sentence, the testator proceeds to give the property over, if the son died before his mother. If the meaning of this be, that the gift over is to take effect whether the son leave children or not, merely because he predeceases his mother, it appears to me to be in a great degree inconsistent with and repugnant to the gift to the children of the son. I am at a loss to conceive, upon what principle the testator could have meant this bounty towards his grandchildren to depend upon the circumstances whether their father survived his mother or not. A bequest to grandchildren if their father survived his mother, but nothing to them if he did not, seems absurd, inconsistent and repugnant to itself, unless explained and made rational by some peculiar extrinsic circumstances, none of which exist in this case. To impute such an intention to the testator seems to me to be what the Court will not do, unless the words and the authorities are too strong to be overcome."

The ruling of the Chancery Court was affirmed by the House of Lords in 7 H.L.C. 67.

In conclusion, it is our opinion that the entire share of income payable to Fred at the time of his death, that is, both his original one-third share and the one-sixth interest acquired by him on Eugene Weill's death, passed, upon Fred's death, under the provisions of subparagraph [a-3]; that Robert Gordon, Jr. would have succeeded to

one-half of such share of income if he had been living at Fred's death and consequently under a proper construction and application of subparagraph [a-4] Robert Gordon, Jr.'s issue are to be substitute takers in their father's place of one-half of the income being received by Fred at his death.

From and after the date of Fred's death the distribution of the net income of the trust should therefore be as follows: One-sixth to Barbara McNamarra King; five-twelfths in equal shares to the Raymond children, George Gordon Keoki Raymond, Grace Eugenie Raymond and Robin Louisa Raymond; and five-twelfths in equal shares to the McNamarra children, Markham Arthur McNamarra and Willa Ann McNamarra.

The judgment is reversed and the cause is remanded for entry of judgment in conformity with this opinion.

*Howard K. Hoddick* (*Hoddick, Rothwell and Chang* of counsel) for Harriet Markham Wedeman as guardian of Markham Arthur McNamarra and Willa Ann McNamarra, minors, respondents-appellants.

*Louis B. Blissard,* guardian ad litem for David McNamarra King, a minor, respondent, cross-appellant.

*H. William Burgess* (*A. William Barlow* of counsel) for Barbara McNamarra King as guardian for George Gordon Keoki Raymond, Grace Eugenie Raymond and Robin Louisa Raymond, minors, respondents-appellees.

*C. A. Gregory* (*Smith, Wild, Beebe & Cades*) for Hawaiian Trust Co., Ltd., petitioner-appellee, appeared but neither filed a brief nor argued.